738 F.2d 1143
 39 UCC Rep.Serv. 1047
 Garrett VARNER, Plaintiff-Appellee, Cross-Appellant,
v.
CENTURY FINANCE COMPANY, INC., Defendant-Appellant, Cross-Appellee.
Pearl M. BRADLEY, Plaintiff-Appellant,
v.
TERMPLAN, INC., Defendant-Appellee.
Josephine SIMPSON, Plaintiff-Appellee, Cross-Appellant,
v.
TERMPLAN, INC. OF GEORGIA, Defendant-Appellant, Cross-Appellee.
 Nos. 82-8277, 82-8393 and 82-8425.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 9, 1984.
 
 Lewis N. Jones, Atlanta, Ga., for Century Finance Co., Termplan, Inc. and Termplan, Inc. of Georgia.
 Ralph Goldberg, Atlanta, Ga., for Varner and Simpson.
 Joseph H. King, Atlanta, Ga., for Bradley.
 Richard V. Karlberg, Jr., Atlanta, Ga., for Termplan, Inc. and Termplan, Inc. of Georgia.
 Donald A. Loft, W. Rhett Tanner, Atlanta, Ga., for amicus curiae Termplan and Georgia Consumer Finance Ass'n, Inc.
 Charles M. Baird, Atlanta, Ga., for Georgia Legal Services Program.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT and VANCE, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 VANCE, Circuit Judge:
 
 
 1
 This consolidated appeal brings to fruition three separate consumer suits seeking statutory damages and attorney fees for violation of the Truth-in-Lending Act (TIL or the Act), 15 U.S.C. Secs. 1601 et seq. Pearl Bradley and Josephine Simpson individually sued Termplan, alleging that their finance agreements with that company contained inadequate loan disclosures in violation of Regulation Z. Garrett Varner instituted a similar action against Century Finance. Both lenders denied the alleged violations and filed compulsory counterclaims to collect on the underlying debts. The borrowers, defendants to the counterclaims, raised affirmative defenses under the Georgia Industrial Loan Act, Off.Code Ga.Ann. Secs. 7-3-1 et seq. Following summary disposition by the district court,[1] the parties petitioned this court for review.A. THE TRUTH-IN-LENDING CLAIMS
 
 
 2
 The district court ruled in Simpson's favor on her Truth-in-Lending claims. Bradley's claims met with defeat. On appeal, the losing parties renew their claims.[2] In addition, Simpson and Varner challenge the method used to calculate the attorney fees awarded pursuant to their TIL claims.
 
 1. Josephine Simpson
 
 3
 a. The May 25, 1979 Loan
 
 
 4
 On May 25, 1979, Simpson obtained a consumer loan from Termplan. The disclosure statement accompanying the promissory note read in pertinent part:
 
 
 5
 This Loan is secured by a Security Interest pursuant to the Uniform Commercial Code covering: (1) the following described property, (2) the proceeds thereof, (3) all property of the same type or character in which Borrower acquires rights, provided that as to consumer goods, other than accessions, such rights are acquired within 10 days after Lender advances funds to or for Borrower upon this loan, (4) all equipment, accessories and parts added or attached thereto.
 
 
 6
 Under Georgia law, a secured party can claim a security interest in after-acquired property (other than accessions)[3] only if the debtor acquires such property within ten days of the date the secured party gives value. Off.Code Ga.Ann. Sec. 11-9-204(2). Simpson argues that paragraph (4) of the disclosure statement violated Regulation Z, 12 C.F.R. Sec. 226.8(b)(5) (1979) (current version with some differences of language at 12 C.F.R. Sec. 226.18(m) (1983)), for failing to disclose the ten-day limit imposed under Georgia law. In Brown v. Termplan, 693 F.2d 1047 (11th Cir.1982), we concluded that the same provision drafted by the same lender, Termplan, contained a Truth-in-Lending violation. Id. at 1049-50. Since Brown squarely controls, we affirm the order of the district court granting summary judgment for Simpson.
 
 
 7
 b. The December 3, 1979 Refinancing
 
 
 8
 In December, 1979, Termplan and Simpson agreed to refinance the May 25 loan. The disclosure statement included in the refinancing agreement contained the following provision:
 
 
 9
 This Loan is secured by a security interest pursuant to a security agreement covering: (1) the following described property; (2) the proceeds thereof; (3) all equipment, accessories and parts which become part of the described property by accession.
 
 The security agreement provided:
 
 10
 You agree that all equipment, accessories and parts added or attached to the property shall become part of it by accession.
 
 
 11
 On appeal, Termplan asks this court to review the district court's determination that the disclosure provision violated the Truth-in-Lending Act. The district court accepted the magistrate's recommendation faulting the disclosure statement for failing to reveal that the security agreement expands the meaning of the term "accession" beyond its statutory definition. We concur in the judgment of the district court and affirm.
 
 
 12
 Under rules in force when the agreement was concluded, Termplan was required to identify the type of security interest it was claiming and the property to which that interest attached. 12 C.F.R. Sec. 226.8(b)(5) (1979).[4] Paragraph (3) of the December 1979 disclosure statement gave Termplan a security interest in "all equipment, accessories and parts which became part of the described property by accession." (Emphasis added). In turn, the companion security agreement defined accessions as equipment, accessories and parts "added or attached" to already secured property.
 
 
 13
 This contractual definition of accessions expands upon the statutory meaning of the term. The Georgia Uniform Commercial Code, Off.Code Ga.Ann. Sec. 11-9-314(1), defines "accessions" as objects "installed or affixed" to other objects. The provisions of the U.C.C. may be varied by agreement. Id. Sec. 11-1-102(3). The effect of the disputed passage in the security agreement is to expand upon the meaning of the term "accession" under Georgia law. In this connection, one court has remarked:
 
 
 14
 For instance, a lamp may be "added" or "attached" to a table by means of a wire or clamp without being "installed" or "affixed." Components and extra speakers may be "added" or "attached" to a phonograph without being "installed" or "affixed." Georgia law does not automatically make goods which are added or attached to other goods accessions of the goods to which they are attached. See, Mixon v. Georgia Bank & Trust Company, 154 Ga.App. 32, 267 S.E.2d 483 (1980).
 
 
 15
 Carr v. Termplan Inc. of East Atlanta, No. C-80-1591-A, slip op. at 4 (N.D.Ga. March 30, 1982). Since the security agreement endowed Termplan with a security interest broader than that created under Ga.Code Ann. Sec. 11-9-314(1), the company was obligated under 12 C.F.R. Sec. 226.8(b)(5) to disclose the extent to which its interest exceeded the scope of accessions contemplated by statute. Finding no merit in Termplan's claim, we affirm.
 
 
 16
 The Truth-in-Lending Act restricts recovery to one penalty per transaction regardless of the number of violations the transaction contains. 15 U.S.C. Sec. 1640(g). We therefore do not reach the other grounds Simpson urges for affirmance. Zamarippa v. Cy's Car Sales, Inc., 674 F.2d 877, 879 (11th Cir.1982).
 
 2. Pearl M. Bradley
 
 17
 In 1978, Termplan refinanced Bradley's existing obligation with the company. The disclosure statement which accompanied the 1978 promissory note contained the following federal Truth-in-Lending statement:[5]
 
 
 18
 In the court below, Bradley argued that this disclosure violated the Act because the two identical subheadings labelled "LOAN FEE" obscured whether the prepaid finance charge was $62.07, $48.00, or the sum of the two. The district court differed and rendered judgment for Termplan.
 
 
 19
 Under applicable Georgia law, the maximum permissible finance charge on Bradley's loan was 8% on the first $600 of the face amount and 4% on any excess. Off.Code Ga.Ann. Sec. 7-3-14(2). Presumably Termplan's disclosure was an attempt to itemize these two components, calculated according to state law, for purposes of federal disclosure.
 
 
 20
 We conclude that Gresham v. Termplan Inc. West End, 648 F.2d 312 (5th Cir. Unit B 1981), requires reversal. Gresham involved the following, nearly identical disclosure by the same lender, Termplan:
 
 PREPAID FINANCE CHARGE
 LOAN FEE LOAN FEE
 
 21
 $NONE $33.60
 
 
 22
 We concluded that the disclosure ran afoul of Regulation Z because there was no indication that the prepaid finance charge was the total of the two "LOAN FEE" items. As such, the disclosure violated 12 C.F.R. Sec. 226.6(c) (1978), deleted, 46 Fed.Reg. 20,892 (1981), which prohibited the mingling of state and federal disclosure requirements "so as to mislead or confuse the customer ..." 648 F.2d at 313-14.
 
 
 23
 We discern no material distinction between the disclosure in this case and that in Gresham. As the Gresham court noted:
 
 
 24
 The same inconsistency would exist if the loan were $1,000 and the two items appeared as "loan fee $48" (8% on $600) and "loan fee $16" (4% on the $400 excess). Is there then one finance charge, and if so is it $48 or $16 or the total of $64, or are there two finance charges?
 
 
 25
 Id. at 314. The deficiency lies in the use of the two identical subheadings "LOAN FEE." Termplan could have skirted the problem by stating a single total sum. Alternatively it could have disclosed the two loan fees under the subheadings "4% fee(A)" and "8% fee(B)," as was done in Blalock v. Aetna Finance Co., 511 F.Supp. 33 (N.D.Ga.1980), aff'd without opinion, 641 F.2d 878 (5th Cir.1981). Having taken neither course, Termplan only invited confusion through use of its free-standing identical subheadings. We therefore reverse the district court's judgment for Termplan. Bradley is entitled to statutory attorney fees under 15 U.S.C. Sec. 1640(a)(3), including fees incident to her TIL appeal.
 
 3. Attorney Fees
 
 26
 The Truth-in-Lending Act authorizes "reasonable attorney fees" for plaintiffs who prevail in actions to enforce its requirements. 15 U.S.C. Sec. 1640(a)(3). The amount of the award is left to the sound discretion of the trial court and is subject to review only for abuse of that discretion. Norwood v. Harrison, 581 F.2d 518, 520 (5th Cir.1978).
 
 
 27
 Simpson and Varner, as prevailing parties, were awarded fees at a base rate of $60 per hour.[6] In computing the base rate, the district court refused to consider rates other than those customarily charged for Truth-in-Lending cases in the northern district of Georgia. We agree that this constitutes error. Under Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), the award must be based on customary fees in cases of like difficulty, id. at 718, whether or not such cases involve Truth-in-Lending violations. See McGowan v. King, Inc., 661 F.2d 48, 52 (5th Cir.1981), and cases cited therein. Fee awards, furthermore, must reflect current rates, i.e., rates that prevailed when the work was done. As we have previously stated, we will not tolerate artifically low computations of TIL attorney fees. Reneau v. Mossy Motors, 622 F.2d 192, 196 (5th Cir.1980). Obviously, if TIL fees were gauged solely against previous TIL awards, the disparity between TIL fees and fees in general would quickly balloon, discouraging the pursuit of meritorious TIL claims.
 
 
 28
 The borrowers also complain that the district court failed to give explicit consideration to certain other Johnson factors[7] in determining the awards. A party who seeks attorney fees shoulders the burden of adducing proof with respect to each relevant factor enumerated in Johnson. The trial court must render explicit findings on Johnson factors that are litigated, Reneau, 622 F.2d at 195-96, but it is not obliged to address factors that lack evidentiary support. Carr v. Blazer Financial Services, Inc., 598 F.2d 1368, 1371 (5th Cir.1979). Since counsel for Varner did attest to the contingent fee arrangement concluded in that case, the district court erred in failing to give that factor express consideration. Yates v. Mobile County Personnel Board, 719 F.2d 1530, 1533-34 (11th Cir.1983). A failure of proof, however, defeats Simpson's analogous claim concerning the asserted delay in the receipt of funds due.[8]
 
 
 29
 Simpson raises a final point involving the consideration of counsel's expertise. The magistrate acknowledged counsel's proficiency in TIL matters but he discounted that factor due to inexpeditious handling. Since proficiency should yield efficiency, we agree that the district court had ample discretion to accordingly discount the import of counsel's expertise.
 
 
 30
 We remand each award for reconsideration of the base rate in light of prevailing fees for cases of similar complexity generally. The district court is further directed to consider the contingent nature of counsel's fee in calculating Varner's fee award. Both awards should be augmented to reflect fees accrued in connection with the TIL issues litigated in this appeal. Bustamante v. First Federal Savings & Loan Association, 619 F.2d 360, 365-66 (5th Cir.1980).
 
 
 31
 B. THE LENDERS' COUNTERCLAIMS TO COLLECT THE UNDERLYING DEBTS
 
 
 32
 By way of answer to the claims lodged against them, the borrowers charge that their loans were void for violations of the Georgia Industrial Loan Act (GILA). The borrowers voice a common complaint regarding the method used to calculate refunds of prepaid interest. Varner raises an additional defense of illegal consideration. We consider each contention in turn.
 
 1. Calculation of Prepaid Interest Rebates
 
 33
 The borrowers assert that their loans, which had undergone refinancing, were void under GILA because the prepaid interest attributable to the original loans was rebated under the terms of those agreements according to the Rule of 78s, instead of by a pro rata method.[9] In view of a division in the lower court, we certified the question to the Georgia Supreme Court. Varner v. Century Finance Co., 720 F.2d 1228 (11th Cir.1983). In reply, the state supreme court stated that "the Industrial Loan Act authorizes the lender to use the Rule of 78's to compute interest rebates in refinancing cases and the Act does not require lenders to compute such rebates on a pro rata basis." Varner v. Century Finance Corp., 253 Ga. 27, 317 S.E.2d 178 (1984). Consequently, this affirmative defense fails.
 
 2. Illegal Consideration
 
 34
 Varner also contends that he cannot be held liable because there is a lack of consideration stemming from the failure to provide a rebate of unearned insurance premiums upon default as required under Clyde v. Liberty Loan, 249 Ga. 78, 287 S.E.2d 551 (1982). On September 12, 1977, Varner executed a credit agreement which included disability insurance coverage. The promissory note contained the following acceleration clause:
 
 
 35
 Should the undersigned fail to pay any Obligations hereby secured or the interest thereon when the same becomes due, or default in any of the undersigned's other obligations or covenants hereunder ... the entire indebtedness hereby secured shall at the option of said Company or assigns become immediately due and payable without notice to the undersigned and the undersigned shall be entitled to a refund credit of a portion of the interest charged calculated on a pro-rata basis. This portion shall amount to the unearned interest at the time of acceleration of this instrument....
 
 
 36
 On March 21, 1979, Varner and Century Finance concluded a new agreement for the dual purpose of refinancing the 1977 loan and advancing additional funds to Varner.
 
 
 37
 In the court below and now on appeal, Varner argues that the 1979 debt is uncollectible because the original 1977 note constituted illegal consideration for the 1979 transaction. Varner correctly contends that the 1977 agreement, under Clyde, violated GILA because it failed to provide for rebates of unearned credit insurance premiums. That decided, the question remains whether the Clyde violation rendered the 1977 agreement illegal consideration so as to bar enforcement of the 1979 contract under GILA.
 
 
 38
 In Henson v. Dixie Finance Corp., 250 Ga. 132, 296 S.E.2d 593 (1982), the Georgia Supreme Court recently addressed a similar argument. Henson involved a suit for liability on a refinancing agreement. The borrowers argued that the original loan contract constituted illegal consideration for the second because the first was usurious. The court enforced the promises relating to the new cash received since those promises were supported by separate consideration. The court concluded, however, that the promises and consideration supporting the refinancing were infected by the usury. Looking to the principles of GILA for guidance, the court held that forfeiture of all interest and charges accrued in connection with the prior loan would satisfy the requirements of the Act. The court limited the lender's recovery under Off.Code Ga.Ann. Sec. 7-3-29 to the outstanding principal attributable to the original note and the principal and interest due on the monies newly advanced. Id. 296 S.E.2d at 595-96. See also Southern Discount Co. of Georgia v. Ector, 246 Ga. 30, 268 S.E.2d 621 (1980); Brown v. Termplan, Inc., of East Atlanta, 693 F.2d 1047, 1050 (11th Cir.1982).
 
 
 39
 After Henson, we lack the latitude to render the 1979 obligation null and void. Varner therefore is liable for the outstanding principal attributable to the 1977 note as well as for the principal and accrued interest due on the newly advanced funds. As a penalty for the Clyde violation, Century Finance shall forfeit all interest and charges, including interest on such charges, accrued in connection with the 1977 agreement.[10]
 
 
 40
 To conclude, we affirm the district court with respect to the lenders' counterclaims against Simpson and Bradley. We vacate the judgment in the counterclaim against Varner and remand for further proceedings in light of this opinion. We similarly vacate the judgment of the district court regarding the TIL attorney fees awarded Simpson and Varner and remand for further proceedings. With respect to the original TIL contentions, we affirm as to Simpson and reverse as to Bradley.
 
 
 41
 AFFIRMED IN PART, REVERSED IN PART and REMANDED WITH INSTRUCTIONS.
 
 APPENDIX A
 
 42
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 [1]
 All three cases originated in the northern district of Georgia and involve Georgia borrowers. Simpson and Varner prevailed on their Truth-in-Lending claims; Bradley did not. The district court granted summary judgment for the lenders on the counterclaims to collect the underlying debts. In Varner's case, however, the district court limited the lender's recovery on the counterclaim to the outstanding principal to penalize the lender for failing to issue a pro-rata rebate of prepaid interest upon refinancing
 
 
 [2]
 Varner prevailed on his Truth-in-Lending claim in the court below. Century Finance does not contest this ruling on appeal
 
 
 [3]
 The after-acquired property at issue in Simpson's case does not include accessions
 
 
 [4]
 12 C.F.R. Sec. 226.8(b)(5) required lenders to disclose:
 A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the Creditor is unable to identify .... If after-acquired property will be subject to the security interest ... this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.
 
 
 [5]
 See Appendix A infra
 PREPAID FINANCE CHARGE
 LOAN FEE LOAN FEE
 $62.07 $48.00
 
 
 [6]
 They do not contest the multiplier awarded in their cases. The same magistrate recommended the fee awards
 
 
 [7]
 Awards for attorney fees must take into account the following factors:
 (1) the time and labor required, (2) the skill requisite to properly perform the legal services, (3) preclusion of other employment by the attorney due to acceptance of the case, (4) the novelty and difficulty of the questions presented, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, (12) awards in similar cases.
 Fain v. Caddo Parish Police Jury, 564 F.2d 707, 709 (5th Cir.1977) (citing Johnson ).
 
 
 [8]
 We assume without deciding that this consideration must be taken into account under Johnson
 
 
 [9]
 Varner was the sole borrower who prevailed on this issue in the trial court
 
 
 [10]
 The fact that unearned credit insurance premiums rather than usurious interest constitute the essence of the GILA violation in Varner's case does not, in our mind, warrant a lesser forfeiture. The purpose of the penalty is deterrence, not recompense, as evidenced by Southern Discount and Henson. In those cases the court ordered a credit of all interest and charges, not only the usurious portion. We conclude that the identical penalty will likewise satisfy the goals of GILA implicated in the present case