**ROYAL PALACE HOTEL ASSOCIATES, INC., d/b/a Buena Vista Palace, a Florida corporation, Plaintiff/Counter–Defendant,**

v.

**INTERNATIONAL RESORT CLASSICS, INC., a California corporation, Defendant/Counter–Claimant.**

**No. 96–36–CIV–ORL–22C.**

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 16, 1998.

GLAZEBROOK, United States Magistrate Judge.

## I. CHRONOLOGY OF PROCEEDINGS

On March 19, 1996, the Honorable Anne C. Conway ordered the parties to file a pretrial statement on or before March 28, 1997. Docket No. 25. Judge Conway ordered lead trial counsel to "meet **in person** to comply with the requirements of Local Rule 3.06(b)." Docket No. 25 at 1—2 (emphasis in Judge Conway's order). Judge Conway also ordered that the case be fully ready for trial at the time of the final pretrial conference; that **"[l]ead trial counsel are required to attend this Conference unless excused"**; and that all counsel must be prepared to accomplish the purposes set forth in Fed.R.Civ.P. 16 and Local Rule 3.06. Docket No. 25 at 3 (emphasis in Judge Conway's order). In bold print, Judge Conway warned counsel of the regular practice in the United States District Court for the Middle District of Florida to impose sanctions—which may include dismissal of the case or the striking of pleadings—if counsel fail to appear in person at the final pretrial conference or fail to comply with the other requirements of the scheduling order. Docket No. 25 at 5. Judge Conway referred the case on consent to the undersigned on March 7, 1997. Docket No. 55.

Eight days before the parties were required to file their pretrial stipulation pursuant to Judge Conway's scheduling order, the undersigned entered an amended (i.e. second) scheduling order. *See* Docket No. 57 filed March 20, 1997. The second scheduling order allowed the parties until October 17, 1997 to file the pretrial statement, and set the final pretrial conference for 10:00 a.m. on Monday, October 27, 1997. Docket No. 57. At the parties' request, the Court set aside three days for a non-jury trial beginning on a date certain—Monday, November 10, 1997— thirteen days (ten working days) after the final pretrial conference. The second scheduling order repeated each of Judge Conway's previous warnings. Docket No. 57 at 2, 3, 5.

By order of October 16, 1997, this Court denied Royal Palace's motion for summary judgment. Docket No. 76. There remained a material issue of fact as to the central issue—whether the parties had orally modified the written agreement pursuant to Florida contract law. Docket No. 76. Review of the various pleadings and other documents on file, however, brought to the Court's attention a flurry of peripheral issues and non-central contentions that were likely subject to stipulation, resolution, or determination before trial. *See, e.g.,* Trial Brief of Royal Palace, Docket No. 78.

The United States Court of Appeals for the Eleventh Circuit has repeatedly warned trial judges that they must "crunch down" or "boil down" cases to the central issues *before* trial. With this admonition in mind, the Court anticipated the filing of a joint pretrial statement that complied with the rules and the Court's orders—i.e., that contained stipulations on uncontested, peripheral, and background issues of fact and law, together with witness lists and exhibits lists. An effective joint pretrial statement is a critical element in focusing and preparing a case for trial. The final pretrial statement and pretrial order integrate and supplant all pleadings, and control the course of the trial. *See* Local Rule 3.06(e); Fed.R.Civ.P. 16(e).

On October 17, 1998, the parties failed to file the joint pretrial statement. Rather, Royal Palace filed a motion for leave to file a unilateral pretrial statement and for sanctions. Docket No. 77. Royal Palace represented that it had been in contact with IRC's lead counsel, Melvin Teitelbaum, on several occasions in an effort to prepare the joint pretrial statement, but that Teitelbaum had provided almost no input, and had refused to work toward preparing the statement on October 16 and 17 due to Jewish holidays (presumably unanticipated). Docket No. 77 at 1—2. The final pretrial conference scheduled for October 27, 1997 was approaching rapidly, and Royal Palace was in final preparation for trial.

A final pretrial conference is held to review the joint pretrial statement to assure that the parties have complied with all aspects of Local Rule 3.06(b), (c) and (e); to formulate and simplify the issues remaining for trial; to eliminate frivolous claims and defenses; and to arrive at stipulations, admissions, and advance rulings on evidence. *See* Fed. R.Civ.P. 16(c). The Court requires the parties to resolve peripheral, unnecessary, and cumulative matters by stipulations of fact and law, and to exchange final marked exhibits, exhibit lists, and witness lists. Because an effective final pretrial conference is critical to efficient case management and effective preparation for trial, both the rules and scheduling orders (in bold print) mandate that lead trial counsel for each party must attend unless excused. Local Rule 3.06(d); Docket No. 25 at 3; Docket No. 57 at 4; *see also* Fed.R.Civ.P. 16(c)—(d). During the week before the final pretrial conference, Teitelbaum telephoned chambers to say that he might not be able to personally attend the final pretrial conference on October 27, 1998. At the undersigned's direction, a law clerk instructed Teitelbaum that he *must personally attend* as lead trial counsel.

IRC filed no motion for an extension of time to file a joint pretrial statement. The Court would have granted a very brief extension had IRC asked for one. IRC filed no memorandum in opposition to Royal Palace's motion for sanctions. IRC filed no motion to excuse lead counsel from attending the final pretrial conference.

The Court convened the final pretrial conference on October 27, 1997, as scheduled. Docket No. 79. Royal Palace's lead trial counsel traveled from Chicago, Illinois to appear at the final pretrial conference on October 27, 1997. Along with local counsel, he was prepared to proceed. Docket No. 79. The Court was prepared to ask Teitelbaum to state whether Royal Palace's representations in its motion for sanctions were accurate; to explain what he had done to prepare the joint pretrial statement as ordered; and to state what he had done regarding the matters listed in Local Rule 3.06(b)—(c) and Fed.R.Civ.P. 16(c).

Teitelbaum, however, failed to appear. Docket No. 79. Teitelbaum had sent in his place a local attorney who was not lead trial counsel, who was largely unfamiliar with the proceedings, and who was unprepared to ad-

dress the specific issues on the pretrial conference agenda. With trial set to commence in thirteen days, Teitelbaum had neither completed nor attempted to complete a joint pretrial statement, and had chosen not to appear at the final pretrial conference to explain why the Court should not impose sanctions.

## II. IRC MOVES FOR RELIEF FROM DEFAULT JUDGMENT AND SANCTIONS

■ On November 17, 1997, the Court granted Royal Palace's motion for sanctions. Docket No. 80. After carefully weighing the options,[1] the Court struck IRC's pleadings, and entered a default against IRC on Royal Palace's complaint. Docket No. 2. On November 21, 1997, IRC filed a motion seeking relief pursuant to Fed.R.Civ.P. 60(b) from the Court's order [Docket No. 80] granting sanctions. See Docket No. 93. In support of its Rule 60(b) motion, IRC filed two affidavits, telephone records, and its memorandum of law. See Docket Nos. 93 and 94.

In its motion for Rule 60(b) relief, IRC asserts that the case is ready for trial "as it stands", and that the Court owes Teitelbaum an apology. See Docket No. 93 at 3–4, 13. The Court rejects IRC's assertion as meritless. As is apparent from the above chronology, IRC has done little to prepare this case for trial. This Court requires more of lead trial counsel than merely appearing at trial with his witnesses and documents. Teitelbaum has violated rules and direct orders requiring him to prepare and file a joint pretrial stipulation, and requiring him to personally attend the final pretrial conference. None of the predicates for relief from judgment under Fed.R.Civ.P. 60(b) having been proved, IRC's motion for Rule 60(b) relief from judgment [Docket No. 93] is DENIED.

1. The law and findings set forth in detail in the order of November 17, 1997 [Docket No. 80] are incorporated into this order.

2. Nevertheless, the Court treats the motion for relief in part as a memorandum in opposition to the entry of a default judgment in any amount.

## III. AMOUNT OF THE DEFAULT JUDGMENT

On November 17, 1997, Royal Palace filed its motion for entry of a default judgment in the amount of $159,401.03. This amount includes $2,856 in attorney's fees related to the joint pretrial statement and final pretrial conference. See Docket No. 82–83. Royal Palace supported its motion with a memorandum of law and several affidavits. See Docket Nos. 83–92. The parties were unable to reach agreement on the amount of the default judgment. See Docket No. 96.

IRC has filed no memorandum in opposition to Royal Palace's motion to set the amount of the default judgment at $159,401.03 [Docket No. 82, filed November 17, 1997]. IRC has filed no motion to enlarge time to respond to Royal Palace's motion, or to propose a different figure. IRC's motion for relief pursuant to Rule 60(b) presents no response to or argument on *the amount* requested in Royal Palace's motion to set the default judgment. See Docket No. 93.[2]

In seeking a total default judgment in the amount of $159,401.03, Royal Palace aggregates the following: 1.) $59,246.58 remaining on IRC's master bill from Royal Palace for services related to the 1995 Passover celebration; 2.) $24,121.03 in interest through October 31, 1997 (accrued on the outstanding $59,246.58 under the parties' contract at 1.5% per month); and 3.) $76,033.42 in attorney's fees *and costs* provided for under the parties' contract. See Docket Nos. 82–92.

### A. Amount of Attorney's Fees

Royal Palace claims that IRC has contracted to pay $76,033.42 as attorneys' fees *and costs* as follows: 1.) $5,932.05 in attorney's fees *and costs* paid to the Santa Monica law firm of Stern, Neubauer, Greenwald & Pauly to defend Royal Palace when IRC sued to recoup an alleged overpayment;[3] 2.) $10,-

3. According to IRC, IRC filed suit in superior court of California for Los Angeles County to *collect an alleged overpayment* to Royal Palace under the contract. See Docket No. 14. Royal Palace filed a motion to stay the action in California asserting that Florida was the more convenient forum. *See id.* The California court granted Royal Palace's motion to stay, and Royal Palace subsequently filed suit in state court in

964.80 in attorney's fees *and costs* paid to the Orlando law firm of Litchford & Christopher to pursue this action; and 3.) $59,136.57 in attorney's fees *and costs* paid the Chicago law firm of Howe & Hutton to pursue this action. *See* Docket No. 83 at 3. The parties' contract provides for an award of attorney's fees and costs as follows:

> *LEGAL ACTION:* In the event the Hotel needs to enter into any legal actions regarding collections of funds for services rendered and/or guaranteed no-show billings on master account, all legal fees, court costs, etc. will be added to those actual monies due the Hotel.

*See* Docket No. 73, attachment.

Royal Palace provides affidavits setting forth the amount of attorneys' fees and costs it incurred under the contract, with breakdowns of time and costs attached. *See* Docket Nos. 85–88, 91. Royal Palace also provides an affidavit and expert opinion of Gregory Presnell, Esq. that Litchford & Christopher and Howe & Hutton reasonably incurred $63,052 in connection with this action during the period from August 1995 through October 1997.[4] *See* Docket No. 89.

This Court excludes from consideration, however, the attorney's fees and costs sought in connection with the California litigation. Royal Palace provides only tenuous justification to support a substantive award of attorney's fees and costs in connection with the related—but still pending—California action which IRC commenced to recoup an alleged

overpayment. This Court cannot determine from the record, including the affidavit of David Stern, Esq. [Docket No. 85], the extent to which these fees were reasonably and necessarily incurred. The Presnell affidavit does not address the attorney's fees paid to the Santa Monica law firm of Stern, Neubauer, Greenwald & Pauly. *See* Docket No. 89.

## B. Reasonableness of Attorney's Fees for Florida Action

IRC has not disputed the amount of the default judgment requested by Royal Palace. Nevertheless, the Court reviews for reasonableness any attorney's fees sought as sanctions pursuant to Fed.R.Civ.P. 16(f) and 37(b)(2). Docket No. 80. The Court also reviews for reasonableness any attorney's fees requested as substantive damages under a contract.

Historically, the federal courts have analyzed demands for attorney's fees pursuant to *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). *Johnson* set forth twelve factors to be considered in calculating a fee award.[5] The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorney's fees to comport with decisions of the United States Supreme Court. *Norman v. Housing Authority,* 836 F.2d 1292, 1299 (11th Cir.1988). *Norman* adopted the lodestar approach for calculating attorney's fees. The lodestar approach presumptively incor-

---

Florida. *See id.* Although the verified complaint filed in state court in Florida did not expressly seek recovery of the attorney's fees in the California litigation, the verified complaint did seek judgment for certain damages against the defendant "... plus service fees, interest, court costs, attorneys fees and such other relief as this Court deems appropriate." *See* Docket No. 2. Royal Palace removed that case to this court. *See* Docket Nos. 1, 11. The removed pleading's demand for fees as a cost of collection under the contract would have been deemed merged into the joint pretrial stipulation. *See* Fed.R.Civ.P. Rule 16(e) and Local Rule 3.06(e).

**4.** Though Royal Palace argues that Teitelbaum alone is liable for the attorney's fees reasonably incurred by Royal Palace in preparing its unilateral final pretrial statement and in attending the scheduled final pretrial conference ($2,856), the

Court notes its November 17, 1997 order requiring both IRC and Melvin Teitelbaum, personally, to pay those attorney's fees. *See* Docket Nos. 80, 83.

**5.** Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

porates the twelve factors adopted in *Johnson,* 488 F.2d 714. *Norman,* 836 F.2d at 1298–99. The Eleventh Circuit applies the lodestar approach of *Norman* in determining a reasonable attorney's fee. *See Camden I Condominium Assoc., Inc. v. Dunkle,* 946 F.2d 768, 772 (11th Cir.1991); *see also Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992). Simply stated, the lodestar is the product of the number of reasonable hours expended and the reasonable hourly rate. *Burlington v. Dague,* 505 U.S. 557, 559–60, 112 S.Ct. 2638, 2639–41, 120 L.Ed.2d 449 (1992) citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

■■ The Court must first determine the reasonable hourly rate. *Duckworth v. Whisenant,* 97 F.3d 1393 (11th Cir.1996); *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994); *Norman v. Housing Authority,* 836 F.2d 1292, 1299 (11th Cir.1988). The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. *Norman,* 836 F.2d at 1299. The party seeking attorney's fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work." *Loranger,* 10 F.3d at 781, citing *Norman,* 836 F.2d at 1299. The court may consider direct evidence of rates for similar services or opinion evidence about rates. *Norman,* 836 F.2d at 1299.

The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill. *Norman,* 836 F.2d at 1300. Skill is evidenced by an attorney's initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. *Norman,* 836 F.2d at 1300–1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Norman,* 836 F.2d at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman,* 836 F.2d at 1301.

■■ Although an attorney who must familiarize himself or herself with either aspect of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the case. *Norman,* 836 F.2d at 1301. Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Finance Company, Inc.,* 738 F.2d 1143, 1149 (11th Cir.1984). No two attorneys possess the same skill, therefore the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. *Norman,* 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. *Norman,* 836 F.2d at 1301; *e.g., Duckworth,* 97 F.3d at 1396.

The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. *Norman,* 836 F.2d at 1302. Inquiry into the reasonable number of hours focuses on the exercise of "billing judgment"—exclusion of those hours not reasonably billable to a client irrespective of counsel's skill, therefore the Court must deduct for redundant hours. *Norman,* 836 F.2d at 1301–02, citing *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). A court must not consider an attorney's skill at this stage as this would constitute a double penalty— the rate would first be decreased and the hours would then be lowered. *Norman,* 836 F.2d at 1301.

■■ The fee applicant bears the burden of documenting the appropriate number of hours. *Norman,* 836 F.2d at 1303, citing *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *United States v. Blue Cross and Blue Shield of Florida, Inc.,* 882 F.Supp. 166, 170 (M.D.Fla.1995). Generalized statements con-

cerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding objections must be made with sufficient specificity. *Duckworth,* 97 F.3d at 1397–98; *Norman,* 836 F.2d at 1301. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question, and may consider the request in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation. *Loranger,* 10 F.3d at 781; *Norman,* 836 F.2d at 1303.

Royal Palace's motion at Docket No. 83 seeks to recover $63,052 in attorney's fees under the parties' contract related to the Florida litigation, including $2,856 in attorney's fees as sanctions in connection with Royal Palace's preparation of its unilateral pretrial stipulation and its attendance at the useless final pretrial conference (the "pretrial matters"). *See* Docket Nos. 82–83. Four attorneys and one paralegal of the law firm Litchford & Christopher spent a total of 73.3 hours at rates ranging from $50 to $200 per hour in connection with this litigation. *See* Docket Nos. 88 at 3–4, 89. Of that total, David Lerner, Esq. spent 6.8 hours at the rate of $145 per hour in connection with the final pretrial matters. *See* Docket No. 88 at 3–4. Three attorneys and one law clerk of the law firm Howe & Hutton, Ltd. spent a total of 278 hours at rates ranging from $80 to $300 per hour in connection with this litigation. *See* Docket Nos. 87 at 3; Docket No. 89. Of that total, Samuel J. Erkonen, Esq. spent 11 hours at the rate of $170 per hour in connection with the final pretrial matters. *See* Docket No. 87 at 3.

The Court is well aware [6] of the range of reasonable hourly rates prevailing in the relevant legal community—the Orlando Division—for similar services provided by lawyers of reasonably comparable skills and experience. The Court determines that $145 per hour and $170 per hour are reasonable rates in light of attorney Lerner's and attorney Erkonen's (of Chicago) skill as reflected in the record. The rates from $50 to $200 per hour incurred in Chicago also fall within the usual range of fees in the Orlando Division.[7] The delegation of duties reflected in the range of fees—from paralegals to senior partners—supports the reasonableness of the fees charged.

Focusing on the exercise of "billing judgment," the total of 351.3 hours [Docket Nos. 87—89] falls within the reasonable number of hours necessary to successfully litigate this action. The total of 17.8 hours [Docket Nos. 87—88] spent specifically on pretrial matters falls well within the reasonable number of hours necessary to successfully prepare Royal Palace's unilateral pretrial stipulation and to attend the useless final pretrial conference. The times itemized in the breakdowns for such services are reasonable. *See* Docket Nos. 87–88.

The lodestar for litigating this case is the product of the number of reasonable hours expended (351.3 hours) and the reasonable hourly rates, or $56,099.[8] The lodestar specifically for the pretrial matters—included in the above $56,099—is the product of the number of reasonable hours expended (6.8 hours by Lerner and 11 hours by Erkonen) and the reasonable hourly rate (6.8 hours at $145 per hour and 11 hours at $170 per hour), or $2,856. The parties seek no adjustments to the lodestar.

### C. Costs Related to the Florida Litigation

 First, a prevailing party may recover costs *as a matter of course* unless other-

---

**6.** Throughout the calculation of the lodestar, the Court considers Royal Palace's request for attorney's fees in light of its own knowledge and experience as to value and hours dedicated to litigation. The Court routinely considers attorney's fee issues.

**7.** Rates of $300 per hour are extremely rare in the Orlando Division. Jonathan T. Howe, Esq. of Chicago (where those fees are far less rare) incurred 29.25 hours at $270 per hour, 14.75 hours at $280, and 37.25 hours at $300, for a total of 81.25 hours at $23,203. Docket No. 87 at 2. The Court reduces those rates to $200 per hour, for a total of 81.25 hours at $16,250 (or $6,953 less than $23,203). The Court reduces the amount found reasonable by the expert— $63,052—by $6,953, leaving a total of $56,099.

**8.** This figure of $56,099 is $6,953 less than $63,052. This reduces Jonathan T. Howe's rate to $200 as previously discussed.

wise directed by the Court or applicable statute. *See* Fed.R.Civ.P. 54(d)(1).[9] Congress has delineated which costs are recoverable. *See* 28 U.S.C. § 1920.[10] When challenging whether costs are properly taxable, the burden lies with the losing party, unless the knowledge regarding the proposed cost is a matter within the exclusive knowledge of the prevailing party. *See Desisto College, Inc. v. Howey–in–the–Hills*, 718 F.Supp. 906, 910 n. 1 (M.D.Fla.1989). The Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440–44, 107 S.Ct. 2494, 2497—98, 96 L.Ed.2d 385 (1987). The Court may not tax as costs any items not included in 28 U.S.C. § 1920. *Id. See also Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460 (11th Cir.1996); *Desisto*, 718 F.Supp. at 911.

Second, a party may recover costs from another party who has contracted to pay them. The contract between Royal Palace and IRC provides for an award of "court costs, etc." *See* Docket No. 73, attachment. The Court reviews awards of costs to determine whether they are properly awardable as substantive damages under a contract. The Court interprets the contract's award of "court costs, etc." as an award of costs properly taxable under 28 U.S.C. § 1920, and no party has offered a different interpretation.

Royal Palace seeks to recover $5,639 in costs in connection with the Florida litigation under the parties' contract, including $4,643.26[11] in costs incurred by Howe & Hutton and $996.24[12] in costs incurred by Litchford & Christopher. *See* Docket Nos. 82, 87 at Exhibit A, 88 at Exhibit A. Royal Palace seeks to recover costs included in the following general categories: 1.) $1,329.11 for court reporter fees and transcripts; 2.) $413.47 for photocopies; 3.) $170.75 for court filing fees and service of process; 4.) $216.76 for postage and federal express charges; 5.) $1,620.21 for travel expenses; 6.) $834.56 for telephone and telecopier charges; 7.) $75.92 in charges for computerized legal research; and 8.) $2,081.63 for miscellaneous costs, including mediation fees and oral argument by Jonathan Howe on the motion to stay proceedings in California. *See* Docket Nos. 87 at Exhibit A, 88 at Exhibit A.

On the Court's detailed review of the record, the Court awards to Royal Palace total costs in the amount of $1,913.33. The costs related to court reporter fees, transcripts, photocopies, court filing fees, and service of process fall under 28 U.S.C. § 1920 and under the parties' contract. Because neither 28 U.S.C. § 1920 nor the parties' contract provide that postage, travel expenses, telephone related expenses, computer

---

**9.** Fed.R.Civ.P. 54(d)(1) provides that:

Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

**10.** Title 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
In response to Fed.R.Civ.P. 54(d), Congress amended § 1920 to substitute "may" for "shall."

**11.** Although Howe & Hutton incurred $5,804.07 in costs in connection with the Florida litigation, Samuel Erkonen, Esq. attests that "at least 80% of the $5,804.07, or $4,643.26, was necessarily and reasonably incurred..." *See* Docket No. 87.

**12.** Although Litchford & Christopher incurred $1245.30 in costs in connection with the Florida litigation, David Lerner, Esq. attests that "at least 80% of the $1245.30, or $996.24, was necessarily and reasonably incurred..." *See* Docket No. 88 at 4. A detailed breakdown of the costs incurred by Royal Palace through the representation of Litchford & Christopher is provided in Docket No. 88 at Exhibit A, page 16–19, and Exhibit B.

research or the miscellaneous costs sought [*see* Docket Nos. 87–88] are properly taxable, and the term "etc." in the contract is unclear, Royal Palace is not entitled to recover the remaining costs sought under the contract. *Cf. Roberts v. Charter National Life Ins. Co.*, 112 F.R.D. 411, 413 (S.D.Fla.1986).

## IV. CONCLUSION

For the reasons stated above, the motion for entry of default judgment at Docket No. 82 is **GRANTED**. The Clerk shall enter a default judgment in favor of plaintiff Royal Palace and against defendant International Resort Classics in the amount of **$141,379.94**. The total of $141,379.94 is the aggregate of 1.) $59,246.58 remaining on IRC's master bill from Royal Palace for services related to the 1995 Passover celebration; 2.) $24,121.03 in prejudgment interest through October 31, 1997 (accrued on the outstanding $59,246.58 under the parties' contract at 1.5% per month); 3.) $56,099 in attorney's fees provided for under the parties' contract; and 4.) $1,913.33 in costs of this action awardable under 28 U.S.C. § 1920 and under the parties' contract. It is

**FURTHER ORDERED** that Melvin Teitelbaum is personally, jointly, and severally liable with IRC to pay Royal Palace $2,856 of the total judgment against IRC.