**AMERICAN BANKERS INSURANCE GROUP, INC., et al., Plaintiffs,**

v.

**BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, Defendant.**

No. CIV. A. 96–2383 (EGS).

United States District Court, District of Columbia.

April 21, 1998.

**38**

James F. Jorden, Paul A. Fischer, Jerome V. Bolkcom, Jorden Burt Berenson & Johnson LLP, Washington, DC, for Plaintiffs.

Richard M. Ashton, James A. Michaels, Bradford S. Fleetwood, Board of Governors of the Federal Reserve System, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

### INTRODUCTION

Plaintiffs, American Bankers Insurance Group, Inc., and two of its subsidiaries, American Bankers Insurance Company of Florida, and American Bankers Life Insurance Company of Florida, commenced this action against the Board of Governors of the Federal Reserve System ("the Board") to challenge a single provision of the Board's Regulation Z (12 C.F.R. Part 226), which implements the Truth in Lending Act (the "TILA"), 15 U.S.C. § 1601 *et seq.* The provision at issue, 12 C.F.R. § 226.4(d)(3), provides for the uniform treatment of debt cancellation fees and credit insurance premiums, and addresses the circumstances under which credit transactions with debt cancellation agreements should be disclosed for purposes of the TILA. Plaintiffs argue that enactment of this provision was arbitrary, capricious, an abuse of the Board's discretion and in contravention of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). The Court disagrees and holds that the Board's exercise of its rulemaking authority under section 105 of the TILA to provide for the treatment of debt cancellation fees and credit insurance premiums uniformly, for disclosure purposes, was rational and based on an entirely permissible construction of the statute.

Accordingly, upon consideration of the parties' cross motions for summary judgment, the responses and replies thereto, and the arguments of counsel, the Board's motion for summary judgment is **GRANTED** and plaintiffs' motion for summary judgment is **DENIED**. Accordingly, plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY

This matter first came before the Court upon plaintiffs' application for a temporary restraining order, which was filed along with plaintiffs' request for preliminary and permanent injunctive relief. Following a hearing, the request for the restraining order was denied by the Court. Further, pursuant to Federal Rule of Civil Procedure 65(a)(2), the Court consolidated the requests for preliminary and permanent injunctive relief with a merits determination and directed the parties to file cross motions for summary judgment.

Thereafter, plaintiffs filed a motion to direct the Board to supplement the administrative record and produce, in unredacted form, those documents for which the Board had asserted a privilege. The Court directed the Board to produce, in unredacted form for the Court's *in camera* review, copies of those documents listed in Privilege Log Items Nos. 1, 2, 3, 4, and 5. In resolving that issue, the Court directed the Board to produce copies of documents listed in defendant's Privilege Log Item No. 4 to plaintiffs. In all other respects, the Court denied plaintiffs' motion to supplement the administrative record.

## FACTS

Plaintiffs are affiliated companies that underwrite credit life, health, and accident insurance, known collectively in the vernacular of the insurance and banking industries as "credit insurance." Credit insurance is a product under which a debtor pays premiums in exchange for an insurance policy that will serve to discharge the balance of a debt in the event of a covered contingency. It is the type of insurance that is issued solely by licensed insurers who must comply with strict and extensive regulatory insurance requirements determined by each state. Since its enactment in 1968, the TILA has expressly stated that premiums for credit insurance are "finance charges" but that creditors may exclude charges for voluntary credit insurance from the amount of the disclosed finance charge if certain conditions are satisfied. TILA § 106(b), 15 U.S.C. § 1605(b).

Debt cancellation agreements also provide that a borrower's obligation to repay all or part of a debt will be discharged if a specified event occurs, such as the death, disability or unemployment of the obligor. Thus, credit insurance and debt cancellation agreements serve a similar purpose for the consumer in that they both extinguish debt under identical circumstances. Prior to October 1996, however, Regulation Z contained no provision expressly dealing with debt cancellation agreements. Further, as the Board contends, creditors had no guidance under Regulation Z as to whether the special rules for disclosing the cost of credit insurance also applied to debt cancellation agreements. In this regard, it is important to note that debt cancellation agreements are considered insurance in some states, but not others. In those states where debt cancellation coverage is considered insurance, creditors could exclude charges for voluntary debt cancellation coverage from the amount of the disclosed finance charge under the statutory and regulatory exception for credit insurance.

Pursuant to 15 U.S.C. § 1604, the Board is the federal agency charged with promulgating "Regulation Z," 12 C.F.R. § 226, the regulation which implements the TILA. The primary purpose of the TILA is to promote the informed use of consumer credit by requiring creditors to disclose the cost and financial terms of credit to promote comparison shopping. 15 U.S.C. § 1601(a). Thus, the consumer will be able to compare more readily the various credit terms available and avoid the uninformed use of credit. 15 U.S.C. §§ 1637–39.

The term "finance charge" is defined in Section 106(a) of the TILA as the sum of all charges payable by the borrower and imposed by the creditor as an incident to the extension of credit. 15 U.S.C. § 1605(a). Section 106(b) of the TILA provides that charges for credit insurance shall be included in the finance charge, unless the coverage is voluntary and the borrower is given certain cost disclosures. 15 U.S.C. § 1605(b).

The Board has promulgated regulations to implement TILA. In section 105(a) of the TILA, Congress specifically authorized the Board to

prescribe regulations to carry out the purposes of this subchapter .... These regulations may contain such classifications, differentiations, or other provisions, and *may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter,* to prevent circumvention or evasion thereof, or *to facilitate compliance therewith.* TILA § 105(a), 15 U.S.C. § 1604(a) (emphasis added). The sole limitation on the Board's authority applies to certain mortgages whose rates and fees are above a specified amount.

On May 16, 1996, pursuant to the TILA, the Board published a proposed rule to amend Regulation Z. *See* 61 Fed.Reg. 26,126. After a public comment period and further review, the Board adopted a final rule, codified at 12 C.F.R. § 226.4(d)(3), in September 1996 which took effect on October 21, 1996. *See* 61 Fed.Reg. 49,237 (1996). According to the Board, the new rule clarifies the proper treatment of debt cancellation fees under TILA. For purposes of cost disclosures, under the new rule, debt cancellation fees are accorded identical treatment to credit insurance premiums, *i.e.,* they are considered to be part of the finance charge, 12 C.F.R. § 226.4(b)(10), but may be excluded from the disclosed finance charge in certain specified circumstances, even in states where debt cancellation coverage is considered insurance or the status is uncertain. 12 C.F.R. § 226.4(d)(3). The legality of this final rule is at issue in this case.

Essentially, the principal issue before the Court is whether the defendant's promulgation of regulation 12 C.F.R. § 226.4(d)(3), which treats debt cancellation agreements and credit insurance uniformly under the TILA for disclosure purposes, is a reasonable exercise of the Board's statutory authority under the Administrative Procedure Act.

Plaintiffs advance two principal arguments in opposition to the Board's final rule. First, plaintiffs argue that the express language of TILA and congressional amendment of the Board's regulatory authority prohibit the Board from exempting fees for debt cancellation agreements from finance charge disclosure. Next, plaintiffs argue that the Board has acted improperly in promulgating the regulation because it is inconsistent with TILA's purpose of providing consumers with meaningful disclosures regarding credit transactions.

## ANALYSIS

### I. Standard of Review for Cross Motions for Summary Judgment

Upon consideration of cross motions for summary judgment, the Court may grant such a motion if the moving party is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975). The Court finds that the cross motions present no genuinely disputed material facts that would preclude a grant of summary judgment in this case.

### II. The Standard for Judicial Review of the Board's Final Rule

Under the APA, courts generally afford "wide and respectful" deference to the decisions of an administrative agency. *Consumers Union of the U.S., Inc. v. Federal Reserve Bd.,* 938 F.2d 266, 269 (D.C.Cir.1991). Thus, this Court must uphold the Board's final rule unless the rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, [or if] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) and (C). An administrative agency rule that is either inconsistent with the proper construction of the relevant statutory mandate or contrary to a statute's congressional intent cannot stand under this standard. *Securities Indus. Ass'n v. Bd. of Governors of the Fed. Reserve Sys.,* 468 U.S. 137, 143, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984).

The Court is well aware that the "respectful deference" standard of review demands that this Court not "substitute its judgment for that of the agency." *DIRECTV, Inc. v. FCC,* 110 F.3d 816, 826 (D.C.Cir.1997) (quot-

ing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Rather, the standard directs this Court to look to see "whether the decision was based on a consideration of the relevant factors and whether there was clear error of judgment." *Id.* (quoting *State Farm*, 463 U.S. at 43, 103 S.Ct. 2856).

### III. Plaintiffs' Standing to Sue

As a threshold issue, the Court finds that plaintiffs have satisfied the requirements for prudential standing to sue pursuant to the APA, 5 U.S.C. § 701 *et seq.* Further, the Court also concludes that plaintiffs have satisfied the injury-in-fact requirement imposed by Article III of the Constitution.

 Pursuant to the APA, plaintiffs must demonstrate that (1) the Board's new rule is an "agency action" that affects them, and (2) the interests the plaintiffs seek to protect—as businesses engaged in substantial credit insurance underwriting in all fifty states—are "arguably within the zone of interests to be protected or regulated by the statute." *Reytblatt v. United States Nuclear Reg. Comm'n*, 105 F.3d 715, 721 (D.C.Cir. 1997) (following *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). To satisfy the "zone of interests" test, the plaintiffs must show that their interests are sufficiently congruent with those of TILA's intended beneficiaries. *See id.* A party is within the zone of interests if its interests, "while not in any specific or obvious sense among those Congress intended to protect, coincide with the protected interests." *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 922 (D.C.Cir.1989). The zone of interest inquiry "seeks to exclude those plaintiffs whose suits are more likely to frustrate than to further statutory objectives." *Id.* (quoting *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 397 n. 12, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)).

 The Board contends that plaintiffs do not have APA standing because they are not intended beneficiaries of TILA. Further, the Board argues, the purpose of the TILA is to provide meaningful credit disclosures to con-

sumers of credit, the statute's intended beneficiaries. In the alternative, the Board maintains that plaintiffs fail to show that their interests "systematically coincide" with interests held by consumers of credit. According to the Board, plaintiffs' interest in protecting their competitive position allegedly is (1) purely fortuitous; (2) "completely incongruent with consumers' interests in meaningful and comparable credit cost disclosure;" and (3) as a pecuniary interest, an insufficient ground for APA standing. The Board also takes issue with plaintiff's concession that their main interest in this litigation is to protect their competitive position in the market as providers of credit life insurance to consumers in all fifty states. The Court is not persuaded by the Board's standing arguments.

 The Court finds that plaintiffs' interests arguably are within the scope of interests that Congress intended to protect. First, a plaintiff's interest in protecting its competitive interests, in and of itself, does not make the plaintiff an unsuitable challenger to a statutory rule. *See Data Processing*, 397 U.S. at 154, 90 S.Ct. 827 ("When statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action."); *see also Arnold Tours, Inc. v. Camp*, 400 U.S. 45, 46, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970) ("When national banks begin to provide travel services for their customers, they compete with travel agents no less than they compete with data processors when they provide data-processing services to their customers."). Further, the District of Columbia Circuit has recognized that a pecuniary interest in a final adjudication of the Board's rule is sufficient to show that an agency's action affects the plaintiffs. *See National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 693 (D.C.Cir.1971) ("But even a minuscule pecuniary stake of the litigant may be sufficient if it provides a suitable and effective vehicle for vindication of larger values.").

Indeed, in the major case relied upon by the Board on the issue of APA standing, the D.C. Circuit held that "a plaintiff who has a competitive interest in confining a regulated

industry within certain congressionally imposed limitations may sue to prevent the alleged loosening of those restrictions, even if the plaintiff's interest is not precisely the one that Congress sought to protect." *First Nat'l Bank and Trust Co. v. National Credit Union Admin.*, 988 F.2d 1272, 1276 (D.C.Cir. 1993).[1] Here, as parties subject to the disclosure obligations established by TILA, plaintiffs clearly come within the zone of interests of the TILA. Further, in challenging the regulation which specifically deals with the disclosures to be made in sales of debt cancellation agreements, plaintiffs share a congruence of interests with the ultimate beneficiaries of the TILA's disclosure provisions, the consumers of credit. Finally, the Court agrees with plaintiffs that this case provides a suitable and effective vehicle for attempting to vindicate the larger values underlying the TILA, *i.e.,* that consumers of credit be afforded full disclosure regrading the costs and terms of credit.

 In concluding that the plaintiffs have met the requirements for APA standing to maintain this lawsuit, the Court has not adjudicated the merits of the parties' claims in order to resolve the question of standing. As this Circuit has stated "it is the interests that the challenger seeks to protect and not the challenge with which we must be concerned .... The standing requirement asks who may bring a particular challenge, not what particular challenges may be brought." *Hazardous Waste*, 885 F.2d at 925. The Court has followed this mandate.[2]

## IV. The Board's Legal Authority to Adopt the Final Rule

 Although the plaintiffs have standing to sue, their claims fail on the merits. Plaintiffs argue on several grounds that the Board lacks the legal authority to adopt its final rule. One such argument advanced by plaintiffs is that the Board exceeded its authority when it excluded debt cancellation agreements from finance charge disclosure because Congress allegedly repealed the Board's authority to do so. Plaintiffs' argument here fails for several reasons. First, the argument is without legal support; plaintiffs fail to cite any legal authority that expressly states that the Board cannot exempt debt cancellation agreements *from disclosure.* Second, the Supreme Court has expressly stated that the Board's interpretation of the TILA is entitled to heightened deference. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive."); *see also Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) ("[A]bsent some obvious repugnance to the statute, the Board's regulation ... should be accepted by the courts, as should the Board's interpretation of its own regulation").

Third, Congress has given the Board broad authority to adopt the substantive rule it has promulgated. Plaintiffs ignore the Board's express statutory authority to interpret the TILA. Indeed, Congress empowered the Board with broad authority and responsibility to fill in gaps in the statute. "By the literal language of the TILA, Congress delegated to the Board discretionary authority to 'make adjustments and exceptions' for any class of transactions under certain exceptions." Def.'s Cross Mot. at 21 (quoting TILA, § 105(a), 15 U.S.C. § 1604(a)). The Board acknowledges, however, that its authority is not without limits and indeed, the new disclosure provisions in the final rule for debt cancellation fees do not surpass those limits. The statute requires that a rule pro-

---

1. On February 25, 1998, the Supreme Court affirmed the Circuit's opinion and expressly held that competitors of financial institutions have prudential standing to challenge agency action relaxing statutory restrictions on those institutions' activities. *National Credit Union Admin. v. First Nat'l Bank and Trust Co.,* —— U.S. ——, ——, 118 S.Ct. 927, 933, 140 L.Ed.2d 1 (1998).

2. In view of the foregoing discussion, it can hardly be disputed that plaintiffs have not satisfied the injury-in-fact requirement imposed by Article III of the Constitution because the Board's new rule allows persons who might otherwise be their customers to be customers of their competitors. *See National Credit Union,* —— U.S. at —— n. 4, 118 S.Ct. at 933 n. 4, 140 L.Ed.2d 1.

mulgated by the Board be consistent with the statute's purpose. The Court finds that the Board has met this obligation.

■ The Court is also not persuaded by plaintiffs' alternative arguments that the Board's decision is contrary to the express language of TILA itself. Plaintiffs argue that Section 106(a)(5) of TILA requires that "[p]remiums or other charge[s] for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss" be included in the finance charge. Plaintiffs fail to cite any precise section of the TILA, however, which expressly forbids the Board's decision to exempt debt cancellation agreements from disclosure requirements. Moreover, plaintiffs concede that the statute provides certain exceptions to the general requirement that premiums for insurance be disclosed as part of the finance charge.

Plaintiffs further argue that the Board has no authority to exempt charges for debt cancellation agreements from finance charge disclosure because such a charge falls within the definition of finance charge under TILA and is not specifically excluded from finance charge disclosure under section 106(b). Moreover, plaintiffs contend that the absence of affirmative language in TILA that expressly exempts debt cancellation agreement fees from finance charge disclosure under TILA demonstrates Congressional intent that debt cancellation agreements be treated differently from credit insurance and that fees charged for debt cancellations be disclosed as finance charges. Again, the Court is not persuaded by plaintiffs' argument.

It is clear from the language in section 106(b) that nothing in that section addresses debt cancellation fees or by its terms precludes the Board from providing for similar disclosure methods for similar products pursuant to other provisions of the Act. Moreover, there is nothing in the legislative history to support an argument that the adoption of the separate disclosure provision in section 106(b) was intended to preclude similar treatment for similar types of costs or that indicates any intent with respect to how debt cancellation fees should be disclosed.

## V. The Final Regulation Does Not Contravene the Statutory Purpose and Policy Rationale Underlying the TILA

■ The Court also finds that the Board's final rule is consistent with TILA's statutory purpose of providing consumers with meaningful disclosure. Section 102 of TILA provides that the purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601.

Plaintiffs argue that the Board's new regulations ignore this statutory guideline on several grounds. First, plaintiffs argue that the final rule contravenes the public policy underlying TILA. Second, plaintiffs maintain that the Board's decision to treat debt cancellation agreements and credit insurance the same, despite distinctions between the instruments, sends consumers the message that the costs and terms of the two can be adequately compared by comparing only the fee charged for each product. Plaintiffs claim that consumers will be misled by the regulation because it fails to notify consumers of significant additional costs stemming from debt cancellation agreement transactions.

■ The Board maintains that its final rule is not arbitrary, capricious or otherwise inconsistent with the policy rationale underlying TILA. The Board especially takes issue with the plaintiffs' argument that "in the last year, the Board has done a complete about-face in dealing with disclosures relating to debt cancellation agreements" and that this abrupt change signals the arbitrary nature of the Board's decision making process here. Pls.' Mot. at 30. The Court finds that, to the extent that the Board has made an "about-face," such a change is not *prima facie* evidence that it has contravened the law. An agency's decision to "change its course" is not unlawful where the agency provides "a reasoned analysis" that it is changing its policies and provides a rationale for doing so. *See Airmark Corp. v. Federal Aviation Admin.*, 758 F.2d 685, 692 (D.C.Cir.1985). Here, the Board has satisfied this burden.

The Board held an extensive public comment period prior to enacting its final rule and the rationale that the Board provided for its decision, including those arguments presented in its pleadings, evinces a "reasoned analysis" on the Board's part.

Mindful of the "substantial deference" standard of review to which it is bound, the Court is not convinced that the final rule leaves consumers less informed. The Court concurs with the Board that absent the new rule, there would be considerable confusion about how to treat debt cancellation coverage because creditors would be compelled to make a state-by-state determination of whether debt cancellation agreements are considered insurance contracts, and thus, eligible for the statutory insurance premium disclosure provisions. Moreover, in view of the differing treatment of debt cancellation agreements under state law, creditors in some states could quote a lower cost for the credit for the same product than that sold in another state because debt cancellation fees were treated differently. The result would not assist consumers in comparison shopping.

The Court expressly rejects plaintiffs' argument that the final rule is bad policy merely because debt cancellation agreements are not subject to state regulation. According to the Board, this fact is not relevant to the required credit cost disclosures under the TILA, because they do not directly involve costs at all, or relate to costs, such as taxes, that are not imposed by the creditor. On this point, the Board is of the opinion that TILA does not affect the government's ability to implement any necessary protections. Furthermore, the plaintiffs do not reconcile the fact that on its face, TILA permits the Board to determine adjustments and exceptions for any class of transactions, that in the Board's view, are necessary to carry out the purposes of the Act.

Contrary to plaintiffs' assertions, the Board argues, and the Court concurs, that its rule will aid in effectuating the purpose of TILA to promote comparison shopping and facilitate creditor compliance. The distinctions between debt cancellation agreements and credit insurance are not material. Because debt cancellation agreements cover the

same contingencies from the consumer's point of view as credit insurance, permitting the fee for debt cancellation to be disclosed in the same manner as insurance fees allows the consumer to compare the cost of similar products in a meaningful manner. Finally, if comparable methods of disclosure for these two products were not permitted, consumers would find it difficult to compare the costs of what in essence are products that compete for the attention of—and purchase by—consumers. The Court will afford substantial deference to the Board's determination and hold that the Board's rule is neither "arbitrary, capricious [nor] an abuse of discretion."

## CONCLUSION

It can hardly be disputed that debt cancellation agreements and credit insurance serve the same basic purpose. Although they differ somewhat in legal form, each product extinguishes the remaining balance of the consumer's loan in the event of a covered contingency. Accordingly, permitting the fee for debt cancellation to be disclosed in the same manner as insurance fees allows the consumer to compare the cost of similar products in a meaningful manner. Indeed, if comparable methods of disclosure for these two products were not permitted, consumers would find it difficult to compare the costs of what in essence are competing products that vie for the attention of consumers. Moreover, absent the Board's new rule, there would exist considerable confusion about how to treat debt cancellation coverage because creditors would be compelled to make a state-by-state determination of whether debt cancellation agreements are considered insurance contracts, and thus eligible for the statutory insurance premiums disclosure provisions. The Board's exercise of its rulemaking authority under section 105(a) of the TILA to clarify the treatment of debt cancellation fees, and provide for their uniform treatment, is rational and based on an entirely permissible construction of the statute. The record supports a finding that the new regulation is fully consistent with the general concern addressed in the TILA that consumers be afforded the uniform and informed

opportunity to weigh costs in comparison shopping. Thus, the Court will uphold the agency action.

In view of the foregoing, defendants' cross motion for summary judgment is GRANT-ED. Plaintiffs' motion for summary judgment is DENIED. This case is Dismissed with Prejudice.

Accordingly, in view of the Court's Order of April 9, 1998 and this memorandum, it is

ORDERED that the Clerk shall enter final judgment for defendant and against plaintiffs.