**Lionel RENEAU, Sr.,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**MOSSY MOTORS,**
**Defendant-Appellee-Cross-Appellant.**

No. 79–3344
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 25, 1980.

---

\* Fed.R.App.P. 34(a);  5th Cir. Loc. R. 18.

Russell & DeRussy, Patrick D. Breeden, New Orleans, La., for plaintiff-appellant-cross-appellee.

Christovich & Kearney, Wm. K. Christovich, New Orleans, La., for defendant-appellee-cross-appellant.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

Lionel Reneau, Sr., filed this suit against Mossy Motors, Inc. alleging disclosure deficiencies under the federal Consumer Credit Protection Act, more commonly referred to as the Truth-in-Lending Act, 15 U.S.C. §§ 1601 *et. seq.* (1976) ("TILA") and the regulations promulgated by the Federal Reserve Board ("FRB") pursuant to the TILA, 12 C.F.R. §§ 226.1 *et. seq.* (1979) ("Regulation Z"). The alleged violations arose out of a consumer credit sale of an automobile in 1973. After a bench trial, the lower court concluded that Mossy Motors had committed two delicts in regard to its disclosures. It had failed to itemize a $9.50 charge for "license, title, brake tag, and notary fees" and included the charge as part of the cash price rather than the finance charge. Second, Mossy Motors sold property insurance covering the automobile in connection with the transaction and charged a premium of $111.00. The term of the insurance was one year, whereas the credit obligation was to persist three years; but the disclosure statement did not reveal the term of the insurance. The lower court ruled that the TILA was violated when Mossy Motors failed to disclose that the insurance term was shorter than the credit obligation term. A statutory penalty of $1,000 was awarded to Reneau, along with costs and a reasonable attorney's fee. Thereafter, a separate hearing was conducted to ascertain a reasonable attorney's fee and subsequently a fee of $1,000 was entered. Mossy Motors appeals the district court's conclusion that it violated the TILA and Regulation Z, and Reneau cross-appeals on the basis that the attorney's fee awarded was inadequate. We agree that Mossy Motors did not disclose as fully as is required by Regulation Z and the Federal Reserve Board's interpretation of the regulations, but we remand to permit the district court to provide more extensive consideration of the factors governing an attorney's fee award.

Mossy Motors argues that it did not violate Regulation Z and the FRB interpretation construing 12 C.F.R. § 226.4(a)(6) (1979) because Reneau was aware that the term of the policy was twelve months. On the disclosure statement, Reneau did indicate that he desired to obtain the insurance at the $110.00 cost disclosed by Mossy Motors.[1] However, when completing the blanks, Mossy Motors *neglected anywhere* to indicate that the $110.00 premium only provided insurance for the first year of the three year obligation.

### 1. *TILA Violation*

▬ Neither 15 U.S.C. § 1605(c) (1976)[2] nor 12 C.F.R. § 226.4(a)(6) (1979)[3] explicitly requires disclosure of the term of property insurance written in connection with the credit transaction. Rather, these sections only require disclosure of the "cost" of insurance written in connection with the sale or loan. On their face, however, they are ambiguous as to whether the cost to be disclosed must include the cost of the insurance for the full term of the obligation if the insurance term is not coterminous with the term of the credit obligation. To clarify the delphic, the FRB promulgated 12 C.F.R. § 226.402 (1979).[4] Subsection (b) of that provision provides that to exclude the insurance premium from the finance charge, the creditor need only disclose the cost of the premiums for the term of the initial policy or policies written in connection with the transaction. However, a statement of the term of the policy is required to be included if it is shorter than the duration of the debt. Without disclosure of the term of a policy that will not persist as long as the credit obligation, the creditor has not effectively disclosed the

---

**1.** Examination of the disclosure statement *shows that the exposition concerning the op*-tional insurance provision appears on the left hand side of the document. The total premium for the property insurance if procured from or through the seller is stated to be $11.00. On the right hand side of the TILA disclosure statement, however, Reneau was in fact charged $111.00 for the premium. It seems clear that Mossy Motors was derelict in completing the insurance box on the left hand side of the disclosure statement and simply omitted a "1" from the premium cost. It might be argued that the insurance premium was improperly excluded from the finance charge under 15 U.S.C. § 1605(c) (1976) and 12 C.F.R. § 224.4(a)(6) (1979) because a "clear, conspicuous, and specific statement of the cost of the *insurance if obtained from or through the credi*-tor" was not furnished. "A misleading disclosure is as much a violation of TILA as a failure to disclose at all." *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980). In view of our resolution, we need not address this issue.

**2.** 15 U.S.C. § 1605(c) (1976) provides:

(c) Charges or premiums for insurance, written in connection with any consumer credit transaction, *against loss of or damage to* property or against liability arising out of the ownership or use of property, shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person

through which the insurance is to be obtained.

**3.** 12 C.F.R. § 224.4(a)(6) (1979) requires inclusion in the finance charge of:

(6) Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating that the customer may choose the person through which the insurance is to be obtained. (footnotes omitted).

**4.** 12 C.F.R. § 226.402 (1979) provides:

§ 226.402. Term of insurance coverage (a) Under § 226.4(a)(5) and (6) certain disclosures of insurance premium costs, if applicable, are required. The question arises as to whether such amounts of cost disclosed must include the cost of insurance for the full term of the transaction.
(b) Under § 226.4(h) the cost of insurance for the full period of insurance coverage which *the creditor will require* shall be disclosed if the cost of the insurance premium is required to be included in the finance charge. However, if the cost of insurance is not required to be included in the finance charge, the cost to be disclosed need only be the cost of premiums for the term of the initial policy or policies *written in connection with the trans*-action, accompanied by a statement of the type of insurance and the term thereof.

"cost" of the insurance. *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 980–81 (5th Cir. 1974). Thus, 12 C.F.R. § 226.402(b) (1979) indicates that without disclosure of the term of the insurance, the creditor has not adequately revealed the cost of the insurance, within the requirements of 12 C.F.R. § 226.4(a)(6) (1979), so as to permit the exclusion of the premium from the finance charge. Although the interpretations of Regulation Z by the FRB are not binding on this court, they are "entitled to great weight, for [they] constitute[ ] part of the body of 'informed experience and judgment of the agency to whom Congress delegated appropriate authority.' " *Downey v. Whaley-Lamb Ford Sales, Inc.*, 607 F.2d 1093, 1095 (5th Cir. 1979) (per curiam), *quoting, Philbeck*, 499 F.2d at 976. They are usually followed in this circuit. *Smith v. Chapman*, 614 F.2d 968, 974 (5th Cir. 1980). We embrace the interpretation here because we believe that it is sound and is logically consistent with the language contained in Regulation Z. Moreover, it is consonant with the TILA's philosophy of promoting the informed use of credit by rejecting the philosophy of "let the buyer beware" in favor of a philosophy of "let the seller disclose." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). Without including notice of the term of the insurance, the premium was not properly excluded from the finance charge. The lower court did not err in finding a violation.

▆▆▆ Our conclusion is not shaken by the assertion that the violation was merely technical and did not injure Reneau because he was aware of the term of the insurance policy. The technical requirements of the TILA and Regulation Z must be strictly enforced if standardization of terms, permitting meaningful comparisons of availa-

ble credit by consumers, is to be achieved. *Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 370 (5th Cir. 1976). An injured consumer is not an indispensible prerequisite to a conclusion that the TILA or Regulation Z has been violated.

> It is now well-settled that an objective standard is used in determining violations of TILA. It is not necessary that the plaintiff-consumer actually have been deceived in order for there to be a violation. . . . In fact, consumers who are aware of the true terms of a contract are more able to see that these terms are not clearly and conspicuously disclosed on the installment sales contract form. Thus, the purpose of the Act is more readily served by allowing lawsuits by these consumers who are less easily deceived.
>
> The remedial scheme in the TIL Act is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case.

*Smith*, 614 F.2d at 971, *quoting in part, Williams v. Public Finance Corp.*, 598 F.2d 349, 356 (5th Cir. 1979) (citations omitted).[5]

### 2. *The Attorney's Fee Award*

▆▆▆ The determination of a reasonable attorney's fee is a matter that lies within the sound discretion of the district court under the TILA. *McGowan v. King, Inc.*, 616 F.2d 745, 746 (5th Cir. 1980) (per curiam). The factors which should guide the court's exercise of discretion are set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *McGowan*, 616 F.2d at 746; *Carr v. Blazer Financial Services, Inc.*, 598 F.2d 1368, 1370–71 (5th Cir. 1979).

Here, the district court made very brief findings,[6] which were addressed to only the

---

**5.** We need not investigate the other violation found by the district court. A single statutory penalty of $1,000 for the multiple violations was entered below even though the underlying credit transaction occurred, and suit was filed, prior to the effective date of the 1974 amendment to the TILA limiting recovery for multiple

disclosure infractions to a single penalty. 15 U.S.C. § 1640(g) (1976). Reneau does not here contend that he was entitled to more than one penalty for the two alleged deficiencies.

**6.** While the district judge stated that he considered "all the factors," the conclusory averment that all relevant factors have been

first, second, and ninth *Johnson* factors: "I think therefore, that considering . . . the time . . . but I don't think the case, particularly for counsel of Mr. Breeden's familiarity with these matters, was a complex case." Record, vol. 2 at 8. In addition, the lower court expressly indicated a desire to deter attorneys from bringing suits which are premised on technical violations of the TILA and to thwart the practice by some lawyers of inviting their clients to bring in all of their installment notes so that the attorney may examine the disclosures for technical errors. The judge below made it plain that he found no great social purpose served by technical application of the TILA. Finally, he professed a belief that social interests and professional standards precluded him from awarding an attorney's fee in excess of the recovery by the plaintiff.

We remand for further development of the relevant *Johnson* criteria and the weight to be afforded each factor. Utilizing the same ingredients, the district court shall award Reneau fees for the work of his attorney in prosecuting this appeal and for the proceedings in the district court on remand. *McGowan*, 616 F.2d at 747. We add a few remarks to guide the proceedings which must follow. First, it is not the province of the federal courts to undermine the congressional policy of promoting the informed use of credit, 15 U.S.C. § 1601 (1976), through parsimonious attorneys' fees awards in those instances where the courts find only technical violations. The *Smith* court emphasized that deterrence of even technical errors encourages uniformity of disclosures and effective comparative shopping for credit by the unsophisticated consumer. Second, depression of attorneys' fees awards is not the proper mechanism

for controlling abuses by unsavory lawyers who improperly solicit business. If it were, the credit emptor as well as reputable merchants who strive to disclose credit terms in accordance with the TILA would be counted among the ultimate victims because the plaintiff's bar would be reticent to prosecute even meritorious suits. Finally, we can countenance no artificial ceiling on an award of attorneys' fees. *Cf. Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir. 1980) (award of attorney fees under 42 U.S.C. § 1988). While an award greatly in excess of a client's recovery requires strong support from the particular circumstances of the case, *Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir.) (per curiam), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978), the ceiling on the client's recovery should not operate as an impenetrable barrier to reasonable compensation. Righteous campaigns are not always won at modest cost.

In sum, we affirm the conclusion of the district court that Mossy Motors violated the TILA and Regulation Z. We remand to permit the lower court to tie the attorney's fee award more closely to the *Johnson* factors. Although *Johnson* may not exhaust all the relevant criteria for every case, *Knighton*, 616 F.2d at 799–800, the district court allowed impermissible elements to influence the award in the case at bar.

REMANDED.

weighed is not sufficient to permit meaningful review of the award. *Gay v. Board of Trustees of San Jacinto College*, 608 F.2d 127, 128 (5th Cir. 1979). We do not require a meaningless parroting of each of the *Johnson* criteria, but we need some assurance that the court has arrived at a just fee based upon the appropriate standards. Some cases may require the balancing of all twelve facets. *Davis v. Fletcher*, 598 F.2d 469, 470–71 (5th Cir. 1979) (per curiam).