**Roger LONDON, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**CHASE MANHATTAN BANK USA, N.A., et al., Defendants.**

No. 99–1298–CIV.

United States District Court, S.D. Florida.

March 30, 2001.

Order Denying Defendant's Motion for Reconsideration April 30, 2001.

Michael Elliott Criden, Alan H. Rolnick, Michael A. Hanzman, Hanzman, Criden, Chaykin & Rolnick, Coral Gables, FL, for Plaintiffs.

Katherine E. Sidaway, Greenberg Traurig, Stuart Harold Singer, Carlos Mario Sires, Daniel Arthur Casey, Kirkpatrick & Lockhart, Miami, FL, R. Bruce Allensworth, Kirkpatrick & Lockhart, Boston, MA, Franklin G. Burt, Farrokh Jhabvala, Jorden, Burt, Boros, Cicchetti, Berenson & Johnson, Miami, FL, for Defendants.

### OMNIBUS ORDER

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant Chase Manhattan Bank USA, N.A.'s Motion for Summary Judgment (DE 193), filed on June 15, 2000, and Plaintiff's Motion for Partial Summary Judgment on Liability (DE 179), filed on July 14, 2000.

THE COURT has considered the Motions, the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons explained below, the Court finds that Plaintiff's Motion for Partial Summary Judgment to the extent based on Count I arising under the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.,* should be granted, that Defendant Chase Manhattan Bank U.S.A., N.A.'s Motion for Summary Judgment to the extent based on Count I should be denied and that the cross motions for summary judgment to the extent based on Count II should be denied as moot in light of the amendments made to Count II in the Third Amended Complaint.

### FACTS [1]

Defendants Chase and Wal–Mart Stores, Inc. ("Wal–Mart") offer a co-brand-

1. The facts that follow are only those facts relevant and material to the Court's disposi-

ed credit card to qualified applicants called the "Chase/Wal–Mart Mastercard." Statement of Undisputed Material Facts in Support of the Motions for Summary Judgment of Chase Manhattan Bank USA, N.A. and Wal–Mart Stores, Inc. ("Chase SUF") at ¶ A1. An individual desiring to apply for the Mastercard fills out a standard application (the "Take–One") that Wal–Mart makes available and which is designed to be completed at a Wal–Mart store. Id. at ¶ 5; Plaintiff's Statement of Undisputed Material Facts ("SUF") at ¶ A. Apart from soliciting information typically associated with the credit approval process, the Take–One asks whether the applicant wishes to enroll in a package of credit insurance called "LifePlus." Id. The LifePlus package consists of life, disability, involuntary unemployment, and leave of absence insurance coverages. Id. Only one form of the Take–One has been used since the inception of the Chase/Wal–Mart Mastercard in late 1996. Plaintiff's SUF at ¶ A.

The Take–One contains eight sections.[2] Section 6 is entitled "LIFEPLUS CREDIT INSURANCE ENROLLMENT (OPTIONAL)" and states:

> YES. I want to have the minimum monthly payment for this credit card made for me in the event my income is interrupted. Enroll me in optional Life-Plus. I have read and understand the attached information on LifePlus and its cost. *Be sure to include date of birth above. Your enrollment cannot be processed without it.*

Exhibit A to Affidavit of Gregory Giordano. Within this section and to the right of the above text is the text "If yes, initial here X" and a line for the applicant's initials. Id.

The reverse side of the Take–One application contains additional information regarding LifePlus including, *inter alia,* that "[t]here is no charge for LifePlus in any month when [the applicant] has no outstanding balance" and that "the monthly premium is $.75 per $100 of the outstanding balance." The reverse side further states that "LifePlus is optional." Id.

On December 14, 1998, Plaintiff applied for a Chase/Wal–Mart Mastercard using a Take–One he obtained and completed at a Hallandale, Florida Wal–Mart store. Chase SUF at ¶ D1; Deposition of Roger London ("London Depo.") at 44, 52. Plaintiff completed the application in approximately 45 seconds. London Depo. at 48, 73. Plaintiff did not read any of the text on the reverse side of the application and read only part of the text of Section 6. Id. at 53, 54. In completing the application, Plaintiff initialed the line provided in Section 6 indicating his desire to purchase LifePlus. Id. at 52, 53.

Although Plaintiff's February 1999 credit card statement reflected a charge for LifePlus, Plaintiff testified that he was unaware he had purchased LifePlus until March 1999. Id. at 25, 60–61. To date, Plaintiff has not canceled his LifePlus coverage. Id. at 61–62.

### LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. *See Ad-*

---

tion of Count I because, as noted above Plaintiff's cross summary judgment motion will be denied as moot to the extent based on Count II.

**2.** The Take–One is part of a four page brochure.

*ickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See Adickes,* 398 U.S. at 157, 90 S.Ct. 1598. *See also Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997) (citing *Adickes* ).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings, after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

■ If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *See Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

■ Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the nonmoving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### LEGAL ANALYSIS

■ In Count I, Plaintiff alleges that Chase violated 15 U.S.C. § 1605(b) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et. seq.,* and 12 C.F.R. §§ 226.4(b)(7), 226.4(d)(1)(i), and 226.4(d)(1)(iii) of Regulation Z by failing to disclose the cost of LifePlus as part of the finance charge on purchases made with the Chase/Wal–Mart Mastercard. Pursuant to these provisions, charges or premiums for credit life, accident or health insurance written in connection with any consumer credit transaction must be included in the finance charge unless certain requirements are met. Specifically, § 1605(b) of TILA provides that:

Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless

(1) the coverage of the debtor by the insurance *is not a factor in the approval*

*by the creditor of the extension of credit,* and this fact is *clearly* disclosed in writing to the person applying for or obtaining the extension of credit; and

(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.

15 U.S.C. 1605(b) (emphasis added). Similarly, § 226.4(d)(1) of Regulation Z provides, in relevant part:

(1) Voluntary credit insurance premiums. Premiums for credit life accident, health or loss-of-income insurance may be excluded from the finance charge if the following conditions are met:

(i) The insurance coverage *is not required by the creditor,* and this fact is disclosed in writing.

(ii) The premium for the initial term of insurance coverage is disclosed. If the term of insurance is less than the term of the transaction, the term of insurance also shall be disclosed.

(iii) The consumer signs or initials an affirmative written request for the insurance after receiving the disclosures specified in this paragraph.

12 C.F.R. § 226.4(d)(1) (emphasis added).

According to Plaintiff, the Take–One fails to satisfy TILA § 1605(b)(1) and (2) and Regulation Z § 226.4(d)(1) in the following three ways: (1) the Take–One fails to disclose in the precise language of TILA § 1605(b)(1) that LifePlus coverage "is not a factor" in the approval by Chase of the extension of credit; (2) alternatively, the Take–One fails to disclose in the precise language of Regulation Z § 226.4(d)(1)(i) that LifePlus coverage "is not required" by Chase in order for an applicant to obtain a Chase/Wal–Mart Mastercard; and (3) in any event, the manner in which Chase uses the word "optional" does not provide

meaningful disclosure pursuant to TILA § 1601(a). Additionally, Plaintiff argues that the Take–One fails to clearly disclose the Lifeplus premium as required by TILA § 1605(b)(2) because it fails to disclose the component costs of the insurance coverage and, therefore, an applicant cannot "give specific affirmative written indication of his desire to [obtain LifePlus] after written disclosure to him of the cost thereof." 15 U.S.C. § 1605(b)(2). Chase responds that it was not required to parrot the "is not a factor" language contained in 15 U.S.C. § 1605(b)(1) in order to avoid including the cost of LifePlus in the finance charge; that pursuant to § 226.4(d) of Regulation Z it was required only to disclose that the purchase of LifePlus "is not required" by Chase to obtain the Mastercard; that its use of the word "optional" is the equivalent of the phrase "is not required;" that, in any event, it is insulated from TILA liability by the safe harbor provision contained in 15 U.S.C. § 1640(f) because it relied in good faith upon Regulation Z § 226.4(d)(1) in disclosing that LifePlus is optional; and neither § 1605(b) of TILA nor § 226.4(d)(1) of Regulation Z requires Chase to disclose the component costs of LifePlus as it is sold only as a package. The Court addresses these contentions below.

### Sufficiency of Take–One Disclosures under TILA and Regulation Z

### A. Disclosure that the Applicant Need Not Purchase LifePlus To Obtain the Chase/Wal–Mart Mastercard

### 1. Whether TILA § 1605(b)(1) Required the Take–One To Disclose Lifeplus "Is Not A Factor" In the Approval of the Mastercard

 As an initial matter, the Court addresses Plaintiff's argument that the Take–One fails to conform to § 1605(b)(1) of TILA because it fails to track the stat-

ute by stating that enrollment in LifePlus "is not a factor" for Chase in its decision whether to issue the Mastercard. In this regard, Plaintiff relies upon *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) to argue that in determining whether Plaintiff is entitled to summary judgment on this claim the Court should confine itself solely to the language of § 1605(b)(1) in order to make this assessment. Of course, this argument wholly ignores the fact that Plaintiff, himself, is asserting that Chase violated § 226.4(d) of Regulation Z which requires the creditor to disclose that the credit insurance "is not required" by the creditor in order to avoid disclosing the premiums as a part of the total finance charge. *See* Third Amended Class Action Complaint at ¶ 56.

Notwithstanding the inconsistency in Plaintiff's position, the Court has carefully considered Plaintiff's contention that § 226.4(d)(1) of Regulation Z, to the extent its language deviates from the statutory language, is an impermissible construction of the statute in light of *Chevron* and that, therefore, Chase was required to parrot the statutory language in the Take–One in order to comply with TILA. In *Chevron,* the Supreme Court held that whenever a court reviews an agency's construction of a statute, it is confronted with two questions. First, whether Congress has directly spoken to the precise question. If so, "that is the end of the matter;" for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. If, however, the court determines that Congress has not directly addressed the precise question at issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *See id.*

■ The Supreme Court, however, did not hold or suggest in *Chevron* that a court

interpreting a regulatory statute should employ a myopic approach in determining whether Congress has directly spoken to an issue. In *Chevron,* the Court stated, "We are not persuaded that parsing of general terms in the text of the statute will reveal an actual intent of Congress." *id.* at 861, 104 S.Ct. 2778. Accordingly, the Court looked beyond the particular 1977 Amendments to the Clean Air Act which required permits for the construction and operation of new or modified major stationary sources [of emissions] in order to determine whether the EPA had adopted a regulation defining "stationary source" that was a permissible construction of the statute. *See id.* at 851–58, 104 S.Ct. 2778. *See also Food and Drug Adm. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132–33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) ("In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation .... It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.' A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme.' "). As is clear from Supreme Court decisions subsequent to *Chevron,* a court considering the validity of an implementing regulation properly considers the text of the statute in light of the statutory framework and the structure and purpose of the statute as a whole, and that analysis is informed by a reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to operate. *See, e.g., Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,* 515 U.S. 687, 703–08, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995); *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696–700, 111 S.Ct. 2524, 115 L.Ed.2d

604 (1991); *K–Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

With these considerations in mind, the Court notes that Congress's purpose in enacting TILA was to facilitate the informed use of credit by consumers through meaningful disclosure of credit terms. *See* 15 U.S.C. § 1601(a). The drafters of TILA believed that a uniform system of disclosure would allow consumers to compare the cost of credit and to shop effectively for the best credit buy. *See* H.R.Rep. No. 1040, 90th Cong., 1st Sess., at 10–11 (1967). They also were convinced that meaningful disclosure would enhance economic stabilization and strengthen competition. *See* 15 U.S.C. § 1601(a). Congress recognized, however, that to achieve this purpose whatever legislation was passed had to address the myriad forms in which credit transactions then occurred and would occur in the future. *See Mourning v. Family Publications Serv.*, 411 U.S. 356, 365, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (citing letter from Paul R. Dix, Chairman of the Federal Trade Commission, to Senator A. Willis Robertson, Chairman of the Senate Comm. on Banking and Currency, Feb. 18, 1964, in Hearings on S. 750 Before the Subcomm. on Production and Stabilization of the Senate Comm. on Banking and Currency, 88th Cong., 1st and 2nd Sess., pt. 2, at 1303 (1963–64)). Consequently, Congress decided to lay the structure of the Act broadly and to delegate broad authority to the Federal Reserve Board to promulgate a single set of comprehensive regulations necessary to render the Act effective. *See id.* at 365, 93 S.Ct. 1652; 15 U.S.C. § 1604. Further, as is fully apparent from the text of § 1602(y) of TILA, Congress intended that those regulations, which subsequently were promulgated as Regulation Z, would be authoritative respecting the implementation of TILA's disclosure provisions. This subsection states that "[a]ny reference to any requirement imposed under this subchapter or any provision thereof includes reference to the regulations of the Board under this subchapter or the provision thereof in question." 15 U.S.C. § 1602(y).

Given the unique structure and framework of TILA, as explained above, this Court is not persuaded that when Congress enacted 15 U.S.C. § 1604(b)(1), it intended to dictate the precise language that a creditor must employ in connection with an extension of credit in order to be relieved of the obligation of including the cost of credit insurance in the finance charge. *See Mourning,* 411 U.S. at 365–66, 93 S.Ct. 1652 (explaining that in addition to the broad grant of authority, the Board specifically is empowered to promulgate regulations that define classifications and exceptions reasonably necessary to insure that the objectives of TILA are met); 15 U.S.C. § 1604(a) (providing that the Board may prescribe regulations that contain classifications and differentiations and adjustments and exceptions for any class of transactions). In this regard, the Court notes that neither party has provided this Court with a citation to a single case invalidating a credit transaction due to the fact that the TILA disclosure deviated from the statutory language. *Cf. Mitchell v. Industrial Credit Corp.*, 898 F.Supp. 1518, 1530–31 (N.D.Ala.1995) (finding that credit insurance premium was appropriately excluded from the finance charge, and thus no violation of TILA, based upon a disclosure that tracked neither the language of the Act nor Regulation Z). More importantly, Plaintiff has not articulated any reason why § 1605(b)(1), unlike all of the other disclosure provisions of TILA, was intended as other than a guideline, the practical implementation of which Congress deliberately elected to leave to the Federal Reserve

Board. Rather, this Court believes that, in the words of *Chevron,* Congress expressly delegated to the Federal Reserve Board the responsibility of filling a "gap," *i.e.* the implementation of Congress's directive that credit insurance be disclosed as a finance charge unless the creditor clearly provides the information required by 15 U.S.C. § 1605(b).

## 2. Sufficiency of the Take–One Disclosures under Regulation Z: "Is Not Required" vs. "Optional"

■ Having disposed of the Plaintiff's argument that Chase violated TILA by failing to disclose in the precise language of § 1605(b)(1) of TILA that the purchase of LifePlus "is not a factor" in its decision to extend credit, the Court turns to Plaintiff's argument that the Take–One violates § 226.4(d)(1) of Regulation Z because it describes LifePlus as "optional" rather than stating that LifePlus "is not required" in order for Chase to issue the Mastercard. In this regard, Plaintiff suggests that if Chase was not required to parrot § 1605(b) of TILA, Chase was required to parrot the language in the regulation and that its failure to do so obscures the fact that the borrower's decision whether to purchase LifePlus will not affect Chase's decision to issue the credit card. Additionally, Plaintiff points to Model Form H–1 to suggest that TILA requires technical—meaning literal—compliance with Regulation Z.

■ Having carefully considered Plaintiff's arguments, the Court disagrees that TILA, Regulation Z, or Model Form H–1 requires that Chase disclose the voluntary nature of LifePlus in any particular manner so long as the disclosure is clear and conspicuous. *See* 12 C.F.R. 226.5(a)(1); *Veale v. Citibank, F.S.B.,* 85 F.3d 577, 581 (11th Cir.1996) (reasoning that TILA does not require perfect notice, rather clear and conspicuous notice). In *Rodash v. AIB*

*Mortgage Co.,* 16 F.3d 1142, 1146 (11th Cir.1994), upon which Plaintiff relies for this dubious proposition, the Eleventh Circuit eschewed a mechanical approach and scrutinized the circumstances of the transaction to determine whether a creditor's notice of right to rescind was deficient. Similarly, in *Brooks v. Maryville Loan and Fin. Co.,* 679 F.2d 837, 839 & n. 5 (11th Cir.1982), the Eleventh Circuit explained that a common sense approach to analyzing the sufficiency of TILA disclosures is appropriate despite the fact that TILA is liberally construed in favor of the consumer. Likewise, in *Smith v. Chapman,* 614 F.2d 968, 972 (5th Cir.1980), the Fifth Circuit stated that "[s]trict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation." As for Model Form H–1, TILA itself makes clear that a creditor is not required to use any prescribed model form or clause to be in compliance with the Act. *See* 15 U.S.C. § 1604(b) ("Nothing in this subchapter may be construed to require a creditor ... to use any model form or clause prescribed by the Board under this section.").

Consistent with the foregoing authorities, the relevant issue is not whether Chase tracked the precise language of § 226.4(d)(1) in the Take–One, but rather whether Chase's use of the word "optional" in lieu of the phrase "is not required" undermines the quality of Chase's disclosure concerning LifePlus. In this regard, the Court first notes that Plaintiff has failed to supply a definition of the word "optional" which is at variance with the meaning of the phrase "is not required." In fact, as Chase points out in its opposition memorandum, the common sense and dictionary definitions of "optional" are "left to the discretion of the one concerned,"

"something that is elective," and "involving the act of choosing." *See, e.g.,* Websters Third New International Dictionary 1585 (1981). In other words, "optional" means "not required." The Federal Reserve Board itself uses the term "optional" in place of the phrase "not required." *See* Official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I at 726.[3]

Moreover, as Chase also points out, courts adjudicating claims under § 1605(b)(1) of TILA and § 226.4(d) of Regulation Z have consistently used the terms "optional" and "not required" interchangeably. *See Jones v. Fitch,* 665 F.2d 586, 591 (5th Cir.1982) (explaining that the essential disclosure for credit shoppers is whether the insurance is required or optional); *Rivera v. Dick McFeely Pontiac, Inc.,* 431 F.Supp. 506, 508 (N.D.Ill.1977) (stating that when credit insurance is optional and is clearly noted as such on the face of the contract, the insurance premium is properly excluded from the finance charge); *Whitlock v. Midwest Acceptance Corp.,* 449 F.Supp. 631, 641 (E.D.Mo.1977) (explaining that the exception to the requirement to include insurance costs in the finance charge exists where the insurance coverage is optional and finding that the loan statement clearly disclosed that fact), *rev'd on other grounds,* 575 F.2d 652 (8th Cir.1978); *Fisher v. Beneficial Fin. Co. of Hoxise,* 383 F.Supp. 895, 899 (D.R.I.1974) (noting that insurance authorization form which provided that the taking of credit of the credit life and disability insurance was entirely optional complied with TILA and Regulation Z).

While the undersigned does not question Plaintiff's representations that the credi-

tors in these cases actually used the phrase "is not required" in their credit applications, the fact remains that the courts deciding these cases used the term "optional" and the phrase "is not required" as if they were synonyms. Their usage as well as the dictionary definitions of "optional" and "not required" strongly supports the conclusion that the two terms have the same common sense definition. Accordingly, the Court disagrees that any meaningful distinction can be drawn between Chase's use of the word "optional" and the phrase "is not required" as it appears in § 226.4(d)(1) of Regulation Z.

### 3. "Meaningful Disclosure" under TILA and Regulation Z

▆ The Court next addresses Plaintiff's contention that even if "optional" and "is not required" are synonymous, the manner in which Chase uses the term "optional" in the context of the Take–One fails to disclose in a meaningful manner that Chase will not consider an applicant's decision to decline enrollment in LifePlus in deciding whether to issue a Chase/Wal–Mart Mastercard. The Court notes with respect to this argument that it was not fully articulated by Plaintiff until the oral argument held before the undersigned on March 21, 2001. When asked during the argument whether this issue had been discussed in the moving papers, Plaintiff could only point to footnote 11 in its reply memorandum in which the actual argument consists of the assertion, without explanation or analysis, that Chase's disclosure also was not made "clearly, conspicuously, and in meaningful sequence." *See* Plaintiff's Reply Memoran-

---

**3.** In discussing the Federal Reserve Board's Official Staff Commentary, the Court acknowledges Plaintiff's argument based on *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), that Board Commentary is not controlling unless, first, an ambiguity to which the Commentary

relates is found in the regulation. However, like Chase, the Court does not rely on the Commentary as authoritative but merely as further evidence that "optional" and "is not required" are commonly understood as synonymous.

dum of Law in Support of His Motion for Partial Summary Judgment on Liability at 6. Nonetheless, the Court addresses the argument because it raises a pristine legal issue at the heart of the policies underlying TILA. According to Plaintiff, the disclosure is not "meaningful" because the term "optional" as employed by Chase in the Take–One is not accompanied by any additional language conveying that enrollment in LifePlus will not influence Chase's decision whether to issue a Chase/Wal–Mart Mastercard.

In assessing whether a particular TILA disclosure is "meaningful," the law is well-established that it should be assessed objectively, *i.e.* from the standpoint of the reasonable consumer. *See, e.g., Smith v. Chapman,* 614 F.2d 968, 971 (5th Cir. 1980). As discussed above, however, the creditor need not state this fact in any particular language, nor with any great detail. *See Veale,* 85 F.3d at 581 (explaining that TILA requires clear and conspicuous notice). As has often been noted, TILA's requirement of "meaningful disclosure" does not mean "more disclosure." *See, e.g., Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (explaining that the concept describes a balance between complete disclosure and informational overload).

Additionally, in order to determine whether Chase's use of the term "optional" constitutes "meaningful disclosure," the Court must identify the nature of the information that Congress intended creditors to supply to their borrowers concerning credit insurance if the premiums are not to be included in and disclosed as a finance charge. *See* 15 U.S.C. § 1605(a),(b). In this regard, the Court notes that pursuant to TILA § 1605(a) costs incident to an extension of credit generally must be disclosed as part of the finance charge unless the facts surrounding the transaction show that the charge

was incurred by the consumer voluntarily. For example, in *Veale,* the Eleventh Circuit found that Federal Express charges incurred by borrowers in connection with a loan closing were not properly considered a part of the finance charge because the borrowers could have chosen not to pay the fees and the lender did not require them. *See Veale,* 85 F.3d at 579. *See also, Hager v. American General Fin., Inc.,* 37 F.Supp.2d 778, 783–85 (S.D.W.Va. 1999) (denying lender's motion for summary judgment where factual issue existed as to whether plaintiffs voluntarily purchased credit insurance in light of lender's misleading oral disclosure that the insurance was required to obtain the loan).

However, unlike finance charges which are covered generally in TILA § 1605(a), TILA § 1605(b) treats premiums for credit life, accident, or health insurance written in connection with a consumer credit transaction as presumptively a finance charge unless the particular disclosures required by subsections (1) and (2) of TILA § 1605(b) are made. This arrangement suggests that Congress perceived that consumers routinely were being required to purchase or, at least led to believe that they were required to purchase, these types of credit insurance in order to obtain extensions of credit. It further suggests that Congress included specific disclosure provisions in TILA § 1605(b) in order to ensure that an individual's decision to purchase credit insurance written in connection with a consumer credit transaction was truly voluntary. *See American Bankers Ins. Group, Inc. v. Board of Governors of the Federal Reserve Sys.,* 3 F.Supp.2d 37, 39 (D.D.C.1998) (stating that § 1605(b) of TILA allows a creditor to exclude credit insurance premiums from the finance charge if the coverage is voluntary); Elizabeth Renuart & Kathleen E. Keest, National Law Center, Truth in Lending, §§ 3.9.4.3, 3.9.4.5.2.1, 3.9.4.5.2.2 (discussing the "voluntariness"

requirement in determining TILA violations and explaining that credit insurance premiums also must be included in the finance charge where a creditor gives the consumer the option of purchasing the insurance and the consumer does so).

With these considerations in mind, the Court turns to whether the manner in which the Take–One uses the word "optional" meaningfully discloses that enrollment in LifePlus is wholly voluntary. Chase argues, and the Court agrees, the Take–One disclosure that LifePlus is "optional" can be understood by a reasonable consumer to mean that enrollment in the credit insurance program is not a consideration for Chase in connection with its approval of the credit application. However, it seems equally clear that a reasonable applicant could understand the Take–One disclosure to mean, as Plaintiff argues, that while enrollment in LifePlus is not required to obtain the credit card, Chase nevertheless could choose to consider the applicant's decision whether to enroll in LifePlus in making its decision whether to approve the applicant for the issuance of a Chase/Wal–Mart Mastercard.

In *In re Whitley*, 772 F.2d 815, 817 (11th Cir.1985), the Eleventh Circuit held that a lender's delinquency charge disclosure did not comport with TILA and Regulation Z's clear disclosure requirement because it was susceptible of two equally reasonable interpretations. *See also Watts v. Key Dodge Sales, Inc.*, 707 F.2d 847 (5th Cir. 1983) (same); *In re Porter*, 961 F.2d 1066, 1077 (3rd Cir.1992) (finding that lender's notice of right to rescind did not comport with TILA's clear disclosure requirement because it was susceptible of two equally reasonable interpretations). Because Chase's disclosure also is susceptible of two equally plausible constructions it similarly fails to convey clearly that a person's decision to purchase LifePlus will not affect Chase's decision whether to approve him for a Mastercard. This lack of clarity, moreover, is inconsistent with the meaningful disclosure required by TILA §§ 1601(a) and 1605(b) because a consumer who believes that Chase's decision to issue him a Mastercard may be influenced by the fact that he agreed to enroll in LifePlus has not made a truly voluntary decision to participate in the LifePlus program.

In short, Chase's ambiguous disclosure that enrollment in LifePlus is "optional" is not meaningful because it fails to convey clearly that Chase will not consider the consumer's decision whether to enroll in LifePlus in its credit approval process.[4] The disclosure language therefore fails to satisfy the requirements of TILA § 1605(b)(1) and § 226.4(d) of Regulation Z and Chase has violated TILA by failing to include and disclose the cost of LifePlus as part of the finance charge in the Take–One.[5] *See* 15 U.S.C. § 1640(a).

---

**4.** In reaching this conclusion, the Court acknowledges that the Federal Reserve Board's Model Form H–1 suffers from the same deficiency. *See* Model Form H–1 ("Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.")

**5.** Additionally, because Chase's disclosure may leave a reasonable applicant with the impression that a decision to purchase Life-Plus will affect the decision to approve the credit application favorably, the disclosure vi-

olates the purposes underlying TILA: full disclosure of the actual cost of credit so that consumers can make informed choices in their credit transactions. *See* 15 U.S.C. § 1601(a) (providing that the purpose of TILA is to assure the meaningful disclosure of credit terms so that consumers may avoid the uninformed use of credit and to protect consumers against unfair credit card practices); 12 C.F.R. § 226.1 (explaining that its purpose also is to promote the informed use of consumer credit by requiring disclosures concerning its terms and cost and to regulate certain credit card practices).

## 4. Safe Harbor

■ Consequently, the Court next considers Chase's argument that it is protected from liability under 15 U.S.C. § 1640(f), TILA's safe harbor provision, because it complied with Regulation Z § 226.4(d).[6] Section 1640(f) provides a defense to violations of TILA when the creditor can show that it acted in good faith in conformity with any regulation by the Board. *See Hamilton v. Southern Discount Co.*, 656 F.2d 150, 152 (5th Cir.1981). Chase claims it acted in good faith in conformity with Regulation Z because it complied with the disclosure requirements of § 226.4(d) thereof. As stated above, however, the Court is not persuaded that Chase made a meaningful disclosure in compliance with TILA and § 226 .4(d)(1) of Regulation Z because even accepting that "optional" and "is not required" are synonymous, Chase's mere disclosure that LifePlus is "optional" does not constitute a "meaningful disclosure."

Moreover, the Court finds that the cases on which Chase relies do not support its argument that its disclosure complied with Regulation Z § 226.4(d) and thereby satisfied the requirements of TILA because the disclosure Chase made in the Take–One application was not akin to the disclosures made in these cases. *See Jones v. W.O. Fitch*, 665 F.2d 586 (5th Cir.1982)[7] (involving form stating "Credit Life And Disability Insurance is not required to obtain this loan. No charge is made for credit insurance and no credit insurance is provided unless the Borrower signs the appropriate statement below"); *Fort v. First Citizens Bank & Trust Co.*, 526 F.Supp. 22 (M.D.N.C.), *aff'd*, 673 F.2d 1309 (4th Cir. 1981) (involving form that stated "I understand that such insurance is not required by Bank for this credit extension and that such purchase is voluntary on my part"); *Greeson v. Lexington State Bank*, 497 F.Supp. 301, 302 (M.D.N.C.1980) (involving application stating "Credit life insurance and/or disability insurance are not required to obtain this loan. No such insurance is provided unless maker signs the appropriate statement below. I desire credit life insurance only at the cost set forth in Item 2 for the term of the loan"); *Williams v. Blazer Financial Services, Inc.*, 598 F.2d 1371, 1373 (5th Cir.1979) (involving form that stated "Credit Life and Disability Insurance is not required to obtain this loan. Such insurance will only be procured for the term of the loan if Customer(s) request(s) Creditor to obtain such insurance by signing below"); *Dzadovsky v. Lyons Ford Sales*, 452 F.Supp. 606 (W.D.Pa.1978) (involving form stating "Credit life insurance and credit disability insurance are not required for this loan, but credit life insurance is available at a cost of $___ and credit life insurance and

6. 15 U.S.C. § 1640(f) titled "Good faith compliance with rule, regulation, or interpretation of Board or with interpretation or approval of duly authorized official or employee of Federal Reserve System" provides:
No provision of this section, section 1607(b) of this title, section 1607(c) of this title, section 1607(e) of this title, or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by

the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

7. The Court relied on the Exhibits to Plaintiff's Opposition to Chase and Wal–Mart's Motion for Summary Judgment for the language in the applications when the opinions did not quote directly from the application.

**1328**

credit disability insurance is available at a cost of $___. Debtor signing the following request will be insured and voluntarily requests and authorizes Lender to obtain the insurance indicated"); *Souife v. First Nat'l Bank of Commerce, New Orleans,* 452 F.Supp. 818, 823 (E.D.La.1978) (involving form that stated "Credit Life Insurance is not required in order to obtain this loan. Customer may purchase such insurance coverage through Bank on a voluntary basis"); *Whitlock v. Midwest Acceptance Corp.,* 449 F.Supp. 631, 641, 643 (E.D.Mo. 1977), *rev'd on other grounds* 575 F.2d 652 (8th Cir.1978) (involving form that stated "Insurance is not required in order to obtain this loan"); *Rivera v. Dick McFeely Pontiac,* 431 F.Supp. 506 (N.D.Ill.1977) (involving application stating "Coverage of The Buyer by Any Such Insurance Is Not Required by Seller ... Buyer's Approval: I Desire to Obtain The Creditor Insurance Checked Above For The Buyer Proposed For Insurance"); *Anthony v. Community Loan & Investment Corp.,* 559 F.2d 1363, 1369 (5th Cir.1977) (involving form that stated "Credit Life and Disability Insurance is not required to obtain this loan"); *Fisher v. Beneficial Finance Co.,* 383 F.Supp. 895, 899 (D.R.I.1974) (involving form that stated "the undersigned expressly states and agrees that this authorization is made voluntarily, not upon any requirement of the Lender or any of the Lender's employees and acknowledges that the taking of such insurance is entirely optional").

■ Furthermore, the Court is not persuaded by Chase's argument that its reliance on the advice of its in-house counsel supports its claim that it acted in compliance with Regulation Z. According to 15 U.S.C. § 1640(f), Chase's mistaken and good faith reliance on this source does not protect it from liability. Rather, Chase must show it acted in good faith in conformity with a regulation made by the Board. *See Hendley v. Cameron–Brown Co.,* 840 F.2d 831, 834 (11th Cir.1988)

(quoting *Cox v. First Nat'l Bank of Cincinnati,* 751 F.2d 815, 825 (6th Cir.1985)) (stating Section 1640(f) "does not protect a creditor who *fails* to conform with a regulation or interpretation through an honest, good faith mistake"); *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1287 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) (noting a creditor's honest and reasonable but mistaken interpretation is not protected).

Accordingly, the Court finds that Chase did not act in good faith in conformity with a regulation made by the Board and, therefore, is not protected by TILA's safe harbor provision. Therefore, Plaintiff is entitled to summary judgment on his claim that Chase violated § 1605(b) of TILA and § 226.4(d)(1) of Regulation Z by failing to disclose adequately the fact that the decision whether to purchase LifePlus is not considered by Chase in its decision to issue the Chase/Wal–Mart Mastercard.

**B. Disclosure of the Cost of LifePlus**

■ Lastly, although unnecessary to the Court's ultimate decision on Count I, the Court addresses Plaintiff's argument that Chase violated TILA and Regulation Z because the Take–One fails to disclose the individual cost for each of the insurance coverages that comprise LifePlus. In support of this claim, London again relies on Model Form H–1 and cites *Reneau v. Mossy Motors,* 622 F.2d 192 (5th Cir.1980). However, neither Model Form H–1 nor *Reneau* compels the conclusion that Chase's LifePlus cost disclosure violates TILA.

With respect to Model Form H–1, Plaintiff argues that the Take–One's failure to adequately disclose the cost of LifePlus is demonstrated by the fact that the form provides for the separate listing of costs for various insurance coverages. As discussed above, however, § 1604(b) specifi-

cally provides that TILA's provisions should not be construed as requiring use of any prescribed model form.

With respect to *Reneau,* the Court finds the case inapposite. The issue before the *Reneau* court was whether an automobile dealer had effectively disclosed the cost of property insurance offered in connection with the credit sale of an automobile where it had failed to disclose the term of the insurance and the term of the insurance was shorter than the term of the credit obligation. *See Reneau,* 622 F.2d at 194–95. Clearly, a consumer cannot ascertain the actual cost of credit insurance, *i.e.* the cost for insurance coverage for the entire term of the credit obligation, where the disclosure form provides only the cost of the insurance for a period less than the credit obligation. An inability to ascertain the actual cost of the credit insurance at issue in this case is not presented.

It is undisputed that LifePlus is available only as a package of life, disability, involuntary unemployment, and leave of absence insurances coverages and, therefore, the actual cost of LifePlus is the aggregate cost of the component insurance coverages. There is no dispute that the Take–One discloses this figure. *See Reed v. Washington Trailer Sales, Inc.,* 393 F.Supp. 886, 890 (M.D.Tenn.1974) (finding that disclosure of aggregate cost of insurance complied with TILA where creditor agreed to arrange for all three of the required insurance coverages or none at all). Plaintiff has failed to point to any provision of TILA or Regulation Z that expressly requires itemization of the costs of insurance coverages provided only as a package.[8]

Furthermore, the undersigned is not persuaded that TILA's goal of promoting the informed use of credit through meaningful disclosure of credit terms is frustrated here. *See Rodash,* 16 F.3d at 1144. Providing the aggregate insurance cost is a meaningful disclosure in this case because, as discussed, the only insurance offered to Chase/Wal–Mart Mastercard applicants is a package of specific insurance coverages. Additionally, disclosing the aggregate cost is not contrary to TILA because TILA is not intended to facilitate bargain shopping for insurance; it is intended to allow consumers to shop for credit. Even assuming TILA is intended to facilitate bargain shopping for insurance, providing the aggregate cost of Life-Plus does not preclude Chase/Wal–Mart Mastercard applicants from adding the costs of the market prices of the component insurance coverages that comprise LifePlus and comparing those totals to the clearly stated cost of LifePlus. *See Reed,* 393 F.Supp. at 890. Thus, the Court finds that Chase's LifePlus cost disclosure does not constitute a violation of TILA and Regulation Z.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment on Liability is GRANTED in part and DENIED as moot in part as stated herein. It is further

ORDERED AND ADJUDGED that Defendant Chase Manhattan Bank USA, N.A.'s Motion for Summary Judgment is DENIED as stated herein. It is further

ORDERED AND ADJUDGED that pursuant to the Court's March 22, 2001

---

8. Instead, in a footnote, London argues that the package nature of LifePlus is alone a violation of TILA. Notwithstanding the fact that London did not rely on this theory of liability in bringing his TILA claims, the Court finds London's argument unpersuasive as he fails to cite to any provision of TILA or Regulation Z or case law that prohibits a creditor from providing a package of insurance coverages, particularly where, as here, the creditor does not require the consumer to purchase the package to obtain the credit.

Order. Defendants shall answer the Third Amended Complaint within 10 days from the date of this Order.

### ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDER-ATION

THIS CAUSE is before the Court upon Chase Manhattan Bank's Motion for Reconsideration or Rehearing of the Court's Order on the Cross Motions for Summary Judgment on Plaintiff's TILA Claim, filed April 27, 2001.

THE COURT has considered the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that the Motion is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 30th day of April, 2001.